# Richmond

R. L. THOMAS v. A. S. NOWLIN.

November 12, 1931.

Present, Prentis, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Allen, Walsh & Waddell,* for the appellant.

*W. E. Duke* and *Homer Richey,* for the appellee.

BROWNING, J., delivered the opinion of the court.

A. S. Nowlin, on the 24th day of June, 1922, instituted a suit in chancery against J. G. Mitchell and R. L. Thomas in the Circuit Court of the county of Albemarle, Virginia. The bill alleged that Nowlin was the legal holder of a certain bond executed by J. G. Mitchell, for $1,250.00, bearing date April 9, 1921, payable to "holder" three years after date, with interest from date; that the said bond was secured by a deed of trust from the said J. G. Mitchell, conveying to D. H. Kizer, trustee, a certain house and lot, located in the city of Lynchburg, Virginia, on Withers street and designated as numbers 504 and 506, said deed of trust dated April 9, 1921, being duly recorded in the clerk's office of the corporation court of the said city; that J. G. Mitchell afterwards, by deed dated July 21, 1921, conveyed the said real estate to R. L. Thomas, who assumed the payment of the several debts which were liens upon the property, one of which was the bond held by the said Nowlin, as a part of the consideration for the conveyance; that on the 29th day of May, 1922, by direction of the beneficiaries therein, the said trustee, under the provisions of the trust deed, sold the property to Mrs. Maggie V. Quinn, at public auction, for the sum of $1,650.00, she being the highest bidder therefor; that the sale price was not sufficient to pay the costs of sale and the liens upon the property which were prior in dignity to the debt of Nowlin represented by the said bond; that the said J. G. Mitchell, as maker, and said R. L. Thomas, purchaser, who assumed its payment, were liable jointly and severally to Nowlin for the amount of the bond with interest, costs of suit, etc; that Nowlin, before purchasing the bond, had the records examined and

the credit standing of Thomas investigated, and that he relied upon the said assumption of its payment by Thomas. Mitchell and Thomas, and afterwards Kizer, trustee, and one L. J. Kidd were made parties defendant to the bill, the two last, by decree, at the instance of Thomas. The defendant, Mitchell, was never reached by the process of the court and he seemed to fade from the picture. Thomas defended the suit by the interposition of a demurrer to the bill and by filing an answer. A number of technical defenses were urged but the gravamen of Thomas' resistance to Nowlin's claim was that he had been defrauded by Mitchell, from whom he acquired title to the property, by false representations made by one Dr. C. K. Garrett, reputed agent of Mitchell, as to the physical condition of the property, its environment and its rental value, etc. The court overruled the demurrer by its decree of March 10, 1930, and held that Mitchell and Thomas, the one as maker and the other by assumption of payment, were jointly and severally liable to Nowlin for the amount of said bond, with interest and costs of suit, and accordingly entered a decree against Thomas. It was recited that Mitchell was proceeded against by order of publication and that no personal service was had on him and that he had entered no appearance, and therefore no personal decree was entered against him. Depositions were taken in the course of the proceedings which revealed certain pertinent facts.

Thomas took title to the property, as has been said, on July 21, 1921. He had never seen it, but he went to Lynchburg in four or five months after his purchase for this purpose and saw it. He traded the property to E. Gary Haden. His petition or brief states that it is not clear whether this trade was made before or after he had seen it. Our comment is that it is hardly likely that he would have gone to Lynchburg to make an examination of property that did not belong to him—that he had previously disposed of.

On examination in chief he was asked this question, after he had testified that the property had been misrepresented to him:

"Q. What did you afterwards find to be the truth with respect to this property?

"A. I did go over to see it in about four or five months after I got it and found it was not anything like he represented it to me, and it was in right bad shape; not on a paved street, and I did not think much of the property."

We think there can be no doubt that Thomas, by an examination made on this visit, knew perfectly well the condition of the property when he traded it to E. Gary Haden. Thomas dealt extensively in real estate. He was no novice in the business. He testified that he did not know Mitchell, never saw him and that his dealings in this instance were with Dr. C. K. Garrett and this is how he described Garrett's picture to him of the property:

"Q. What representation did Dr. Garrett make to you with reference to the character of the property on Withers street in Lynchburg?

"A. Dr. Garrett told me that the property consisted of nine apartments (*I believe he said*) and he told me it was good property, in a good section, and would readily rent and was renting for about $90.00 a month.

"Q. Did he say the property was in good or bad repair?

"A. *As far as I remember*, he said it was in very good repair, and I told him then, if everything is as you say, and the property is all right, I think I will trade with you.

"Q. What did Dr. Garrett say with respect to the demand for the property; did he say that tenants were available, or not?

"A. He said there would be no trouble to get all the tenants I wanted if the others moved out.

"Q. Did he say it was rented at the time?

"A. *I don't remember; I think he did; I am not sure.*

"Q. What did he say with respect to the neighborhood in which the property was situated?

"A. He said it was a good neighborhood.

"Q. Did he make any representations to you with respect to the street?

"A. He said it was a good paved street, *in a good section.*" (Italics supplied.)

Mr. F. L. Harris, a real estate agent, was the only witness other than Thomas who testified as to what was said by Dr. Garrett to Thomas and he was interrogated as follows:

"Q. What representations did you hear Dr. Garrett make with respect to the character and condition of that property?

"A. He represented to Mr. Thomas this property—he painted a rather flowery picture of the property and he represented the property was bringing a very good income and would bring in more with proper handling of the same.

"Q. Did he say that tenants would be found in it, or could be readily found for it?

"A. As well as I remember, he represented most of the property was rented at the time.

"Q. Did he say there was a demand for the property or not?

"A. He said that the property could be rented very well.

"Q. Do you recall what rent he said it was bringing?

"A. As I recall, Dr. Garrett represented to Mr. Thomas the property was either bringing $90.00 a month, or would rent for $90.00 a month."

On cross-examination he was asked:

"Q. As a matter of fact, your recollection is not very clear as to the details of this transaction. I believe you said you could not recall whether he said the property was rented, or would rent?

"A. No, I don't recall all the details of it."

There was evidence that the property was undesirable and cheap; that it was in a section of the city where the lowest class of white people live; that the house or houses were of frame construction and that the particular house contained seven tenements; that it was well constructed but the plumbing was not in good condition; that the property had been improved by repairs and painting and that the street had been improved by making a passable macadam roadway; that at the time Mr. Nowlin, the owner of the bond, made an investigation, the property was renting for $48.00 per month to six different parties. It is not perfectly clear but it may fairly be inferred that the improvements and repairs were made before Mr. Thomas acquired the property.

The defenses all grow out of the major charge of fraud and to that alone we shall address ourselves for it is decisive of the case.

■ Fraud is an ugly thing. It is against every conception of right—of what ought to obtain in the dealings among men. It is elementary that the law does not presume fraud.

In *Herring, et als* v. *Wickham and Wife,* 29 Gratt. (70 Va.) 628, 26 Am. Rep. 405, it was said: "Fraud must be proved—proved by clear and satisfactory testimony. This is the well established rule, universally recognized by the courts, and scarcely needs a citation of authority to support it."

"The law never presumes fraud but the presumption is always in favor of innocence and honesty." *N. Y. Life Ins. Co.* v. *Davis,* 96 Va. 737, 32 S. E. 475, 44 L. R. A. 305.

It has been repeatedly held by this court and others that fraud cannot be assumed on doubtful evidence, but its existence must be proved, either by direct and positive evidence, or by proof of circumstances sufficient to satisfy the judgment and conscience of the court or jury.

■ In the case in judgment the above testimony urged

in support of the charge of misrepresentations amounting to fraud did not satisfy the judgment and conscience of the trial court. The conduct of Thomas after he had purchased the property and had seen it does not commend itself to us as evidencing his own faith, at the time, in the subsequent defense of fraud. He held the property for a time and collected rents from it; he paid an instalment of interest on the very bond as to which he is now repudiating his obligation, and finally he sold it to another, and neither in his letter to Nowlin, transmitting the check for the interest, nor in any other way did he ever suggest that he had been defrauded. His defense to this suit first brings it to light. Upon a full and careful consideration of all the evidence, it seems to us to fall short of that clear and satisfactory proof required to establish fraud.

The testimony relied upon is indefinite and uncertain. It lacks that positiveness which is necessary to constitute proof.

The decree of the trial court is affirmed.

*Decree affirmed.*