STATE EX REL. COWIE, Respondent, vs. LA CROSSE
THEATERS COMPANY, Appellant.

*June 7—June 21, 1939.*

154

For the appellant there was a brief by *Andrew Lees* and *Lawrence J. Brody,* both of La Crosse, and oral argument

by *Mr. Samuel P. Halpern* of Minneapolis, Minnesota, and *Mr. Lees.*

For the respondent there were briefs by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale.*

Fowler, J. The case is an appeal from an order overruling a demurrer to the complaint for insufficiency of facts stated. The action is brought by a private person upon leave of court first granted pursuant to sec. 280.02, Stats. The prayer is for an injunction abating as a nuisance the continuance of Bank Nights by a theater company in three of its theaters in La Crosse. The claim that the continuance constitutes a public nuisance is grounded on the theory that the practice involved in Bank Nights constitutes the operation of a lottery, and that a lottery is a public nuisance and may be abated as such.

The defendant raises three fundamental questions: (1) A private person cannot bring an action to abate a public nuisance unless he sustains some special injury not sustained by the general public; (2) the practice of having Bank Nights does not constitute a lottery; (3) if the practice constitutes a lottery, it constitutes a violation of the criminal law, and equity will not enjoin commission of crimes but will leave enforcement of criminal statutes to the remedies afforded by the criminal law.

(1) That sec. 280.02, Stats., authorizes the prosecution of the action seems clear not only from the terms of the section itself but from its history. There are two statutory provisions covering abatement of public nuisances by private persons. Sec. 280.01 provides:

*"Jurisdiction over nuisances.* Any person may maintain an action to recover damages for and to abate a private nuisance or a public nuisance from which he suffers injury peculiar to himself, so far as necessary to protect his rights and to obtain an injunction to prevent the same."

The defendant claims that under this statute a person must suffer some injury peculiar to himself in order to bring the

action to abate a public nuisance. We assume that this would be true but for sec. 280.02, Stats., which reads:

"*Injunction against public nuisance, time extension.* An action to enjoin a public nuisance may be commenced and prosecuted in the name of the state, either by the attorney general upon his own information, or upon the relation of a private individual having first obtained leave therefor from the court. The same rule as to liability for costs shall govern as in other actions brought by the state. No stay of any order or judgment enjoining or abating, in any action under this section, may be had unless the appeal be taken within five days after notice of entry of such judgment or order or service of the injunction. Upon appeal and stay, the return to the supreme court shall be made immediately."

The action is concededly brought under the latter section. The complaint shows that leave of court was granted to the relator to bring the action in the name of the state. The former section applies to actions brought by a private person in his own name and right. The latter applies to actions by the state brought on relation of a private person. *A priori* the action is properly brought. The defendant's contention is based upon the holding in *Tiede v. Schneidt,* 99 Wis. 201, 213, 214, 74 N. W. 798, decided in 1898, wherein it was held that a private person could not bring an action to abate a public nuisance in absence of special or peculiar injury sustained by him through maintenance of it. Sec. 280.02, Stats., was not then in existence, nor was there then any statute purporting to create any right of a private person to institute an action for abatement of a public nuisance in absence of special damage sustained by him. At that time only the attorney general could move solely in the public right. But sec. 280.02 was enacted in 1905. It is manifest that its enactment authorized a private person to institute an action by the state in the public interest upon leave of court first granted.

The defendant contends that courts of equity have no power to enjoin the violation of criminal statutes, in absence

of statutory authority therefor. If so, the instant statute expressly gives the court the power here invoked, if the thing complained of constitutes a public nuisance. Confessedly, if the thing complained of does not constitute such nuisance the court may not exercise the power invoked upon request and complaint of a private citizen, and no cause of action is stated.

(2) As to whether the operation of the scheme constitutes a lottery. Many cases involving the scheme have been before the courts recently. In all of them it is held, and counsel agree, that a lottery involves three elements. There must be a prize, chance, and a consideration. Two of these elements manifestly exist in the instant case—a prize and a chance. The defendant insists that the element of consideration is absent; the state insists that it is present because of the increased number of ticket sales for admission on Bank Nights; and that while the individual drawing the winning number may not buy any ticket, and thus pay no consideration for his chance for the prize, yet the theater receives a consideration for allowing him his chance in the increased number of tickets sold to others for admission on the night of the drawing. It is of course manifest that the theater receives from its sales of tickets enough to make it pay to maintain the practice, else it would not continue it. Upon the question whether the additional sales induced by the offering of the prize constitutes a consideration, the courts are divided. It is stated in an article in 7 University of Kansas City Law Review, 133, that "where the participants [in the drawing for the prize] are limited to those purchasing admission tickets to the theater, courts have consistently held that such a [Bank Night] scheme constitutes a lottery." As far as our examination has gone, this is a correct statement. The courts are not in accord on the proposition that the scheme constitutes a lottery where numbers are given to persons not buying theater tickets upon registering their names and their numbers are

placed with the numbers of those buying tickets and their numbers are called and they are awarded the prize if they present themselves at the theater stage at the places of drawing within a specified time from the calling of their number. *State v. McEwan* (Mo. Sup. 1938), 120 S. W. (2d) 1098; *Maughs v. Porter* (1931), 157 Va. 451, 161 S. E. 242; *Commonwealth v. Wall* (Mass. 1936), 3 N. E. (2d) 28; *Iris Amusement Corp. v. Kelley* (1937), 366 Ill. 256, 8 N. E. (2d) 648; *Grimes v. State* (1937), 235 Ala. 192, 178 So. 73; *Jorman v. State* (1936), 54 Ga. App. 738, 188 S. E. 925; *State v. Fox Kansas Theatre Corp.* (1936) 144 Kan. 687, 62 Pac. (2d) 929, 109 L. R. A. 698; *People v. Shafer* (1936), 273 N. Y. 475, 6 N. E. (2d) 410, hold that such scheme constitutes a lottery. *State v. Hundling* (1936), 220 Iowa, 1369, 264 N. W. 608, 103 A. L. R. 861; *People v. Cardas* (1934), 137 Cal. App. Supp. 788, 28 Pac. (2d) 99; and *State v. Ames* (1936), 87 N. H. 477, 183 Atl. 590, hold that it does not. The reason most generally given for holding the scheme a lottery is that the great number of those who purchase tickets for the chance of participating in the drawing, thus making the scheme profitable to the theater, furnish the consideration, although others are given chances free. Others base their ruling upon the fact, or at least place emphasis upon it, that furnishing free chances is only a means taken to evade the point of necessary consideration, and thus save the scheme from being held a lottery. We agree with the majority of the courts and hold that the instant scheme constitutes a lottery. Manifestly, a lottery is no less a lottery because the management of it gives away numbers entitling participation in the draw to some persons. It is only all the more objectionable because it does not limit the drawees to the persons buying tickets and thus lessens the chance of those who pay for their tickets.

(3) The defendant contends that even though the scheme involved be a lottery and the operation of lotteries is im-

pliedly prohibited by the constitution of the state, sec. 24, art. IV, which declares that "the legislature shall never authorize any lottery," and is expressly prohibited by sec. 348.01, Stats., yet a Bank Night proceeding is only a violation of the criminal statute, and that the courts will not enjoin violations of criminal statutes except where a statute expressly so provides. Counsel for the state concedes the rule invoked, but, as above stated, contends that a lottery constitutes a public nuisance and sec. 280.02, Stats., empowers the courts to abate it as such.

Counsel for the defendant concede that violations of the criminal statutes which are declared by statute to constitute nuisances, as bawdyhouses, sec. 280.09, disorderly houses, sec. 280.10, Stats., and places where intoxicating liquor is manufactured, kept, or sold contrary to law, sec. 165.24, Stats. 1927, may be abated by the courts, although enforcement of the penalties of the criminal law by criminal prosecution affords a means of suppressing them, but contend that they may not be abated as nuisances unless they are declared by statute to be nuisances. The state contends that nuisances, public or private, may be abated in equity, whether the acts constituting them be declared so by statute or not, even though they also constitute crimes. This view was expressed by this court in its opinion in *State ex rel. Attorney General v. Thekan,* 184 Wis. 42, 46, 198 N. W. 729. The case involved the abatement of a place where intoxicating liquor was kept and sold. Sec. 165.01 (22), Stats. 1923, then in force, declared such places public nuisances, and action to abate therefore lay under that statute, but the opinion of the court states, page 46, that independent of the section above cited, "in view of the public policy of the nation and of the state, the continued use of premises [in question] for manufacture, sale, and possession of intoxicating liquors contrary to law would constitute such premises a public nuisance," notwithstanding the penalties therefor prescribed by the

criminal law and the power of the court to enforce them through the criminal law. The maintenance of a lottery is as much the violation of the public policy of the state as declared by its constitution and its criminal statutes as is the sale of intoxicating liquor in violation of its criminal laws, or as was such sale in violation of the Eighteenth amendment and the state statute when the *Thekan Case, supra,* was decided. The proposition as to the power of equity to abate public nuisances is stated in 5 Pomeroy, Eq. Jur. (2d ed.) § 1893, where it is said:

"Wherever a public nuisance is shown, equity must enjoin it at the suit of the government. 'Every place where a public statute is openly, publicly, repeatedly, continuously, persistently, and intentionally violated, is a public nuisance.'"

This definition is taken from *State ex rel. Vance v. Crawford,* 28 Kan. 726, where there is coupled with the language above quoted after the word "violated," "in defiance of the constitution and laws of the state." From the instant complaint it appears, as above stated, that if the practice involved constitutes a lottery, and we have held that it does, it is within the rule of the *Crawford Case* in every respect there stated. The cases cited in the Pomeroy text mostly involve violation of intoxicating-liquor laws. But other things, if they in fact constitute public nuisances, are also abatable, although they constitute criminal acts, as poolrooms, *Respass v. Commonwealth,* 131 Ky. 807, 115 S. W. 1131; bull fights, *State ex rel. Attorney General v. Canty,* 207 Mo. 439, 105 S. W. 1078; keeping turf exchanges, *Jones v. State,* 38 Okla. 218, 132 Pac. 319; keeping disorderly houses, *People v. Clark,* 268 Ill. 156, 108 N. E. 994. While most of the cases supporting abatement of public nuisances involve acts declared such nuisances by statute, abatability as a nuisance does not depend on statutory declaration, but abatement lies if the thing in absence of statutory declaration is in fact a public nuisance. *People v. Clark, supra; State ex rel. Attor-*

*ney General v. Thekan, supra.* It is quite true that many courts have refused abatement of things constituting crimes, in absence of express statutory authority, on the ground that the commitment of criminal acts will not be enjoined but the enforcement of criminal statutes will be left to prosecution under the criminal law. It was so held, by a divided court, as to a bawdyhouse, upon the ground that a bawdyhouse is not a public nuisance, in *Laymaster v. Goodin,* 260 Mo. 613, 168 S. W. 754; sale of liquor on Sunday, *Commonwealth v. Ruh,* 173 Ky. 771, 191 S. W. 498; shipping liquor into dry territory where not resulting in drunkenness and not a public nuisance, *State ex rel. Gibson v. Chicago, B. & Q. R. Co.* (Mo. App.) 191 S. W. 1051. Other cases to the same effect might be cited, but upon reason a thing that is in fact a public nuisance should be held abatable if a thing is abatable as a public nuisance that is declared such a nuisance by statute. It is the fact of being a public nuisance that invokes and supports the remedy by abatement. The matter might well be rested upon this general principle, as the statement of the court in the *Thekan Case, supra,* was apparently based, but the great weight of the adjudicated cases supports the proposition. In 40 A. L. R. 1145, is a note citing and stating cases on the subject from which it so appears. Another note in 91 A. L. R. 315, carries on the subject. From the two notes it appears that the courts of the United States and the courts of California, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Missouri, Ohio, South Carolina, New Mexico, Florida, and Minnesota support the general proposition that abatement of public nuisances is not denied on the ground that the matter involved constitutes a crime. While there are cases denying injunctive relief in cases involving crime in which general statements are made to the effect that equity will not enjoin violation of the criminal law, read in connection with the facts involved they do not, fairly construed, deny the proposition that acts which violate the criminal law may be enjoined if they constitute public nuisances.

To state or even cite the multitude of cases in support of the general proposition involved, or those on their face seeming to question or deny it, would unduly and to no purpose extend the opinion, and we rest our decision on the demurrer upon what we have above said.

(4) The state asks this court to issue an injunctional order restraining the defendant from continuing the practice involved pending the determination of the case in the circuit court. This court does not, except where the original jurisdiction of the court is directly invoked, grant temporary injunctions. The granting of such injunctions is more appropriately and properly left to the discretion of the trial courts, even if we have jurisdiction to grant injunctions where our original jurisdiction is not invoked in the first instance, which may be doubted and which we refrain from here deciding.

*By the Court.*—The order of the circuit court is affirmed. The motion of respondent for a restraining order is denied.