JOHN E. SHEEHAN, District Attorney, Rock County
You have requested my informal opinion concerning the question of whether or not "cable" television falls within the meaning of "television" under sec. 945.01 (2) (b) 1., Stats. The pertinent sections of ch. 945, Stats., include:
"945.01 (2) LOTTERY. (a) A lottery is an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill. *Page 383 
"(b) 1. `Consideration' in this subsection means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant, but does not include any advantage to the promoter or disadvantage to any participant caused when any participant learns from newspapers, magazines and other periodicals, radio or television where to send his name and address to the promoter.
"2. In any game, drawing, contest, sweepstakes or other promotion, none of the following shall constitute consideration under this subsection:
"a. To listen to or watch a television or radio program.
"b. To fill out a coupon or entry blank which is received through the mail or published in a newspaper or magazine, if facsimiles thereof are acceptable.
"c. To furnish proof of purchase if the proof required does not consist of more than the container of any product as packaged by the manufacturer, or a part thereof, or a facsimile of either.
"d. To send the coupon or entry blank and proof of purchase by mail to a designated address.
"e. To fill out a coupon or entry blank obtained and deposited on the premises of a bona fide trade fair or trade show defined as an exhibition by 5 or more competitors of goods, wares or merchandise at a location other than a retail establishment or shopping center or other place where goods and services are customarily sold; but if an admission fee is charged to such exhibition all facilities for obtaining and depositing coupons or entry blanks shall be outside the area for which an admission fee is required."
"945.02 GAMBLING. Whoever does any of the following may be fined not more than $500 or imprisoned not more than 6 months or both:
"* * *
"(3) Conducts a lottery, or with intent to conduct a lottery, possesses facilities to do so." *Page 384 
The three elements of "prize," "chance," and "consideration" must all be present in order that a contest will constitute a lottery. State ex rel. Trampev. Multerer (1940), 234 Wis. 50, 289 N.W. 600. For the sake of discussion, I will assume "prize" and "chance" are evident in the contest at hand, and I will direct my explanation to whether or not a contest, similar to that of "Bingo," run over a cable television network, contains sufficient "consideration" to constitute a violation of Wisconsin's lottery law.
The act of listening and watching television (945.01 (2) (b) 2. a., Stats.) and the advantage gained by the promoter or disadvantage suffered by a participant as a result of such listening and watching (945.01 (2) (b) 1., Stats.) does not constitute consideration to sustain a prosecution under Wisconsin's lottery law. The legislature does not appear to have made a distinction between television and "cable" television when sec. 945.01
(2) (b) 2. a. was adopted. This statute has the effect of prohibiting the prosecution of "Bingo" games run on television where the only possible "consideration" would be the participants viewing their sets. However, such a contest would become an illegal lottery if other "non-exempt" forms of consideration were present.
In "cable" television there is another element of consideration present which is not cited in the exemptions of sec. 945.01 (2) (b), Stats. Some participants as members of the cable system must pay for the privilege of watching the contest through means of an installation fee and monthly rents. Paying promoters for the chance to participate in the contest and not the act of watching the contest on "television" is the consideration that could support a prosecution under our lottery law. Requiring a participant to purchase a right to take a chance on winning a more valuable prize is the classic method in which a lottery is run. The test is whether the purpose, interest or tendency of the scheme, as disclosed by the scheme itself, is to induce registrants to pay out money to participate in the contest rather than to see the entertainment, and if such is the case the element of consideration is present. Stan v. Miller (1941), 239 Wis. 41, 300 N.W. 738. A substantial possibility exists that customers *Page 385 
would enroll in the cable system to take part in the contest. Therefore sufficient consideration to define the contest as a lottery could be apparent assuming "prize" and "chance" are present.
It should be noted that not all or even a majority of participants must offer some "consideration" to participate in the proposed contest. The element of consideration is present nonetheless because some participants, who are not members of the cable system, are given chances free. Alternative methods for entering a contest, one of which constitutes consideration, injects that element into the contest and makes it a lottery. State ex rel. Cowie v. LaCrosse TheatersCompany (1939), 232 Wis. 153; State ex rel. Regez v.Blumer (1940), 236 Wis. 129, 132.
Inasmuch as television and "cable" television may involve interstate commerce and are regulated by the FCC, Federal law may preempt State prosecution of lotteries broadcasted over television and "cable" systems. 18 U.S.C. § 1304, prohibits the broadcasting of lottery information. The court in Allen B. DumontLaboratories, Inc. v. Carroll, (3 Cir. 1950) 184 F.2d 153,156, held in part,
We think it is clear that Congress has occupied fully the field of television regulation and that that field is no longer open to the States.
See also New York State Broadcasters Ass'n v. U.S. (2 Cir. 1969), 414 F.2d 990, 996. The Court of Civil Appeals of Texas, in considering Federal cases has stated in State v. Socony Mobil Oil Company, Inc. (Tex. 1964),386 S.W.2d 169, 174:
". . . We are convinced that Congress has pre-empted the field of regulating the broadcasting of lotteries over TV, and that we do not have jurisdiction to enjoin TV-Bingo, even though it might constitute a lottery under Texas Statutes."
Furthermore, a Wisconsin court held that it lacked jurisdiction to enjoin TV-Bingo, even though it might constitute a lottery under Texas Statutes.
Furthermore, a Wisconsin court held that it lacked jurisdiction to determine whether a community television antenna *Page 386 
is a private utility because the court was of the opinion that Congress had completely occupied the television field. 89 PUR N.S. 149.
Assuming a preemption a complaint may be directed to the FCC possibly seeking a declaratory order, but it should be noted that generally Federal decisions do not construe "consideration" as broadly as Wisconsin precendent [precedent]. However, the Federal courts and the FCC have not confronted our situation and barring precise statutory language, precedent, and legislative history, they will seek interpretations from American judicial and administrative decisions which could include Wisconsin cases. Federal CommunicationsCommission v. American Broadcasting Co., (N.Y. 1954),74 S.Ct. 593, 347 U.S. 284, 98 L.ed. 699.
There is authority for stating that while Congress has entered the field of communications it has not so preempted the field as to preclude proper local regulations in the exercise of proper police powers (15 CJS Commerce, sec. 81). For instance, in TV Pix, Inc.v. Taylor (1968), 304 F. Supp. 459 (U.S.D.C. Nevada), the court stated that while a community antenna television business is in interstate commerce such local apparatus, local franchises, local intrastate advertising and local intrastate collections gives the CATV a local flavor and State regulation [in this case regulating CATV as public utilities], in absence of Federal legislative intervention, would not constitute a burden on interstate commerce. The court explained:
"In reaching our conclusion, we have given weight to the established rule that in the absence of Congressional occupation of the field, State action in implementation of its concurrent jurisdiction over matters affecting interstate commerce, the subject not being one demanding uniformity of regulation, is presumptively constitutional and the burden is on the plaintiff [in this case the CATV] to prove the substantial adverse burden, obstruction or prejudice to commerce among the states resulting from the State Statute or regulation under attack." p. 464.
In viewing preemption, one cannot judge a claim by reference to broad statements about the "comprehensive" nature *Page 387 
of Federal regulation under the Federal Communications Act. Instead, one must decide case by case whether Congress and its commissions have so far exercised exclusive jurisdiction that belongs to it as to exclude the states from taking action. See Head v. New MexicoBoard (1963), 374 U.S. 424, 83 S.Ct. 1759, 10 L.ed. 2d 983.
In conclusion, it appears that the monies paid by individuals to subscribe to a CATV system could be "consideration" in a Wisconsin CATV lottery prosecution where the promoter was realizing a commercial or financial advantage or the participant suffered a disadvantage in the contest promotion. The act of subscribing to the CATV Service is "consideration" beyond the exception enumerated in 945.01 (2) (b) 2. a., Stats., for a Wisconsin prosecution. However, possible Federal preemption of the communications field may prevent State prosecution, although this must be determined on a case-by-case basis.
I hope this information will be of service to you in analyzing your situation.
RWW:TAH