DONALD R. ZUIDMULDER, District Attorney, Brown County
You have requested my opinion regarding the following question:
"Is `donation bingo' in violation of Chapter 945, Wisconsin Statutes, where bingo is played in its normal manner with `chance' and `prize' present but without prior `consideration', except that after the completion of each game and the awarding of the prize, a `donation' is taken?"
Pertinent provisions of ch. 945, Stats., affecting your question include the following: *Page 406 
"945.01 Definitions relating to gambling. (2) Lottery. (a) a lottery is an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance, even though accompanied by some skill. (Emphasis supplied.)
"(b) 1. `Consideration' in this subsection means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant. * * *
"945.02 Gambling. Whoever does any of the following may be fined not more than $500 or imprisoned not more than 6 months or both:
"(3) Conducts a lottery, or with intent to conduct a lottery, possesses facilities to do so.
"945.03 Commercial gambling. Whoever intentionally does any of the following is engaged in commercial gambling and may be fined not more than $5,000 or imprisoned not more than one year or both.
"(4) Conducts a lottery where both the consideration and the prize are money, or with intent to conduct such a lottery, possesses facilities to do so; * * *"
It is conceded that in Wisconsin a lottery requires three elements: "prize," "chance" and "consideration." Chapter 945, Wisconsin Statutes; State ex rel. Cowie v. La Crosse Theaters Co. (1939), 232 Wis. 153, 286 N.W. 707; State ex rel. Trampe v.Multerer (1940), 234 Wis. 50, 289 N.W. 600; State ex rel. Regezv. Blumer (1940), 236 Wis. 129, 294 N.W. 491; Kayden Industries,Inc. v. Murphy (1966), 34 Wis.2d 718, 150 N.W.2d 447. In viewing games, schemes, and plans involving prize, chance and consideration, the legislature, the courts, and the Attorney General of Wisconsin have traditionally taken a restrictive view in condemning them as lotteries prohibited by the Constitution. Specifically, the courts and the Attorney General of Wisconsin have determined in case after case that "consideration" in its many forms have been present for lottery prosecutions.
"Consideration" can be present in a lottery situation in overt to camouflaged forms. Certainly where direct required remuneration is essential to participate in a contest, "consideration" is present. *Page 407 
Trampe, supra, presented a situation where two patriotic and charitable organizations conducted games of bingo where the participants were required to pay an admission price for entrance to the hall where the bingo games were played. The admission price entitled a patron to a bingo card which gave him the opportunity to play a fixed number of games. The court, in addressing itself to the fact that charitable and patriotic purposes for conducting bingo games offers no redeeming legal excuse, makes reference that "consideration" was present pursuant to the admission price which included one bingo card. The court's reaction that the "charitable and patriotic" argument was without merit emphasized this state's strong declaration of public policy against lotteries as prohibited in the Wisconsin Constitution.
Some promoters allow more flexibility to participants in how they will enter the contests with "consideration" being offered by some but not all participants. Cowie, supra, is the landmark case in this regard. In Cowie, a "Bank Night" scheme allowed patrons to participate by buying an admission ticket to the theater or, alternatively, registering by writing one's name in the lobby without rendering an admission fee; however, one must be in the vicinity to win as only three minutes were allowed to claim the prize after the winning selection was made. The court found "consideration" present in what appears to be a two-fold situation: the increased patronage from the promotion and the money actually spent to purchase tickets by some participants — both an advantage to the promoter. The court acknowledged that, although the person drawing a winning number may not have paid consideration for his ticket, the theater receives consideration by the increased sales of tickets to others. The court stated at p. 158:
"* * * Upon the question whether the additional sales induced by the offering of the prize constitutes a consideration, the courts are divided. The reason most generally given for holding the scheme a lottery is that the great number of those who purchase tickets for the chance of participating in the drawing, thus making the scheme profitable to the theater, furnish the consideration, although others are given chances free. Others base their ruling upon the fact, or at least place emphasis upon it, that furnishing free chances is only a means taken to *Page 408 
evade the point of necessary consideration, and thus save the scheme from being held a lottery. We agree with the majority of the courts and hold that the instant scheme constitutes a lottery. Manifestly, a lottery is no less a lottery because themanagement of it gives away numbers entitling participation inthe draw to some persons. * * *" (Emphasis supplied.)
Stern v. Miner (1941), 239 Wis. 41, 300 N.W. 738, provided another Bank Night scheme similar to Cowie. Participants could register for the contest both inside and outside the theater, and any person was allowed to register without payment of admission fees. In finding "consideration" for a lottery the court referred to State ex rel. Cowie v. La Crosse Theaters:
"What the court had in mind in the La Crosse, supra, was that as a matter of fact the purpose, intent, and almost inevitable tendency of such a scheme is to induce registrants to pay out money to participate in the drawing, rather than to see the entertainment, and that this constitutes the consideration for the lottery and condemns it as such. Many things may constitute the consideration for a contract. It is the fact that they are the intended consideration that imports them into a contract. What was held in the La Crosse case was that the contemplated consideration was increased attendance at bank nights for the purpose of the drawing, rather than to see the show. This purposeand intent is evident from a consideration of the entire scheme." (Emphasis supplied.)
The court viewed the entire scheme in concluding monies paid for the entertainment, in fact, supported and contributed to the lottery drawing. Citing Regez, supra, the court also found "consideration" in the almost mandatory requirement of participant presence in the area of the theater in order to claim the prize in the allotted time.
43 OAG 324 (1954) also supports the contention that "consideration" is present even though all participants do not provide it. Piggly Wiggly Stores promoted bingo and provided entry blanks at their stores and "other business establishments" unconnected with the contest. The Regez, supra, rationale *Page 409 
provided "consideration" in customer traffic to Piggly Wiggly, and the court was not impressed by alternative unconnected sources for entry blanks, for:
"* * * while it may slightly dilute the element of consideration, it clearly does not eliminate it. As a matter of law, the fact that some persons may obtain their chances without giving consideration to the promoter does not save a scheme from being held to be a lottery, so long as enough persons do give consideration to the sponsor to make the scheme profitable for him to operate." State ex rel. Cowie v. La Crosse Theaters Co., (1939), 232 Wis. 153.
This opinion reiterates the proposition that "consideration" need not be absolute for all participants nor will the state be misled by not looking at the entire transaction of the scheme.
Likewise, terminology will not circumvent a promoter's true purpose in having a lottery. 28 OAG 303 (1949) provided a situation where a veteran's organization held a contest where it provided "donations will be accepted to help defray the expense incurred holding the contest." Anyone could enter without making a donation. The opinion held that "the fact that a name may be entered without a `donation' does not necessarily eliminate the element of consideration." The rationale of Cowie, supra, was cited, and in addition, the opinion elaborated:
"In the case of State ex rel. Regez v. Blumer (1940), 236 Wis. 129,132, the Supreme Court defined consideration as: `a disadvantage to one party or an advantage to the other.' I thinkit apparent that the scheme is intended to be profitable to theorganization promoting the same or it would not be operated." (Emphasis supplied.)
In conclusion, the state of Wisconsin has long enforced its strict public policy against lotteries in violation of the Wisconsin Constitution and its statutes. "Consideration" has been found present in many forms for prosecutorial purposes. Although a "donation" contest situation is not "consideration per se" as contemplated in ch. 945, Stats., the surrounding circumstances of a contest's operation may dictate the presence of "consideration" for a lottery violation. The prosecutor must view the fact situation of each contest promotion to ascertain whether, inithe *Page 410 
"donations" provide immediate "consideration" for the promoters in their operation, or whether the "donations" are separate, distinct and apart from the actual contest operation so as to negate the "consideration" element.
RWW:TAH