WALTER KUNICKI, Chairperson Assembly Organization Committee
The Assembly Committee on Organization has requested that I render a formal opinion on the following question. "[D]oes Wisconsin Constitution, article IV, section 24, prohibit all forms of gambling in Wisconsin, except for those matters specified in the Constitution, or does the constitutional term `lottery' have a narrow scope that would allow legislation to be enacted legalizing the forms of gambling to which reference is made in OAG 3-90?"
You have, on behalf of the committee, quoted at length from 79 Op. Att'y Gen. 14 (1990) in which my predecessor opined:
 I therefore believe it to be clear, and conclude, that both the framers of the constitution and the Legislature in its various enactments, treat lotteries as a form of gambling separate and distinct from the other methods of gambling such as betting, playing gambling machines and the like. . . .
. . . .
 . . . I wish to emphasize that the forms of gambling encompassed by the definition of bet and gambling machines are prohibited by statute only, and do not come within the purview of prohibited lotteries as described in the constitution of this state. Therefore, the Legislature may allow casino-type gambling in the State of Wisconsin. *Page 54 
Because my predecessor's opinion is contrary to the prior decisions of the Wisconsin Supreme Court, the legislative history of the 1955 criminal code revision and the manner in which the Legislature has treated the term "lottery" in proposing amendments to our constitution and enacting legislation, I have determined to depart from that opinion.[1]
In construing the constitution, courts rely on the same rules that govern statutory construction. Where there is no ambiguity, there is no room for judicial construction. Ripley v. Brown,141 Wis.2d 447, 415 N.W.2d 550 (Ct.App. 1987). The courts in interpreting constitutional provisions will examine:
 "(1) The plain meaning of the words in the context used;
 "(2) The historical analysis of the constitutional debates. . . .
 "(3) The earliest interpretation of this section by the legislature as manifested in the first law passed following the adoption of the constitution. . . ."
State v. Beno, 116 Wis.2d 122, 136-37, 341 N.W.2d 668 (1984);Jacobs v. Major, 139 Wis.2d 492, 502, 407 N.W.2d 832 (1987).
Article IV, section 24(1) of the Wisconsin Constitution states "[e]xcept as provided in this section, the legislature shall never authorize any lottery or grant any divorce." Words are to be given their plain meaning, that is their ordinary and approved meaning. Sec. 990.01(1), Stats. State v. Williquette, 129 Wis.2d 239,385 N.W.2d 145 (1986). The words should be construed *Page 55 
to give effect to the intent of the framers. State v. Beno,116 Wis.2d at 138.
The term "lottery" has been continuously and uniformly construed by the courts to include the three elements of prize, chance and consideration. Kayden Industries, Inc., v. Murphy,34 Wis.2d 718, 150 N.W.2d 447 (1967); State v. Laven, 270 Wis. 524,71 N.W.2d 287 (1955); State ex rel. Regez v. Blumer, 236 Wis. 129,294 N.W. 491 (1940); and State ex rel. Cowie v. La CrosseTheaters Co., 232 Wis. 153, 286 N.W. 707 (1939). The Legislature is presumed to enact statutory provisions with full knowledge of the existing laws, including decisions of the Wisconsin Supreme Court interpreting relevant statutes. Glinski v. Sheldon, 88 Wis.2d 509,520, 276 N.W.2d 815 (1979). The courts would undoubtedly hold that the Legislature had been aware of the judicial definition of lottery for almost fifty years. See State v. Banks,105 Wis.2d 32, 313 N.W.2d 67 (1981).
Numerous prior opinions of the attorney general have similarly found a violation of the lottery statute whenever the three elements of prize, chance and consideration were present in any scheme. 5 Op. Att'y Gen. 380 (1916), 9 Op. Att'y Gen. 9 (1920), 11 Op. Att'y Gen. 396 (1922), 23 Op. Att'y Gen. 396 (1934), 26 Op. Att'y Gen. 143 (1937), 28 Op. Att'y Gen. 457 (1939), 28 Op. Att'y Gen. 556 (1939), 32 Op. Att'y Gen. 181 (1943), 37 Op. Att'y Gen. 184 (1948), 41 Op. Att'y Gen. 111 (1952), 61 Op. Att'y Gen. 405 (1972), 62 Op. Att'y Gen. 122 (1973). Over the years the attorney general has expressly concluded that gambling activities such as "Las Vegas" type games and casino slot machines constituted a lottery. 70 Op. Att'y Gen. 59 (1981), 32 Op. Att'y Gen. 181 (1943) and 28 Op. Att'y Gen. 556 (1939).
As stated by the Wisconsin Supreme Court: "The legislature, the courts, and the attorney general of Wisconsin have traditionally taken a restrictive view of games, schemes, and plans involving a prize, chance, and consideration, condemning *Page 56 
them as lotteries prohibited by the constitution." Kayden Industries,34 Wis.2d at 724.
The history of our constitutional provision further evidences that the term as construed by the courts was the definition accepted by the Legislature and the people. Until 1965, article IV, section 24 of the Wisconsin Constitution stated simply "[t]he legislature shall never authorize any lottery, or grant any divorce." In April of 1965 the people approved a constitutional amendment limiting the definition of consideration as an element of a lottery. Wis. Const. art. IV, § 24(2). The Legislature quickly added these limitations to the statutory definition. Sec.945.01, Stats.
The next expansion of lotteries was the constitutional amendments authorizing the Legislature to legalize bingo in 1973 and raffles in 1977 when these activities are conducted by religious, charitable, service, fraternal or veterans' organizations or those to which contributions are deductible for federal or state income tax purposes. Wis. Const. art. IV, §24(3) and (4). The Legislature thereafter adopted section945.01(5)(am) which specifically excluded bingo and raffles conducted under chapter 163 from the statutory definition of lottery.
In 1987, article IV, section 24(6) of the Wisconsin Constitution was adopted to provide:
 The legislature may authorize the creation of a lottery to be operated by the state as provided by law. The expenditure of public funds or of revenues derived from lottery operations to engage in promotional advertising of the Wisconsin state lottery is prohibited. Any advertising of the state lottery shall indicate the odds of a specific lottery ticket to be selected as the winning ticket for each prize amount offered. The net proceeds of the state lottery shall be deposited in the treasury of the state, to be used for property tax relief as provided by law.
A separate amendment in 1987 authorized on-track, pari-mutuel wagering. *Page 57 
Prior amendments to the constitution, including the 1987 amendments, removed the absolute prohibition against the Legislature's authorizing a lottery. These amendments narrowed definitions and excepted games and eventually authorized the creation of a state operated lottery. Since these amendments did not modify the preexisting definition of lottery, I can only conclude that the scope of the amendments must be construed identically to the definition of lottery which has been constantly used by the courts, the Legislature and this department. Generally, when a word in one subsection is clear, it will be given the same interpretation as in other subsections of the same section. United States v. Nunez, 573 F.2d 769, 771 (2d Cir. 1978); 2A Singer, Sutherland Statutory Construction §46.06 n. 6 (Sands 4th ed. 1984).
There is additional evidence that the Legislature itself has operated under a broad definition of the term "lottery." "[T]he overall purpose of the 1965 amendment was to remove the constitutional obstacle to the conduct of the kinds of activities forbidden by Cowie [theater bank nights], Regez [drug store promotional giveaway] and Laven [watching television or listening to radio] . . . under the original sec. 24 of art. IV, Const."Kayden Industries, 34 Wis.2d at 730. The amendment to legalize bingo in 1973 and the amendment to authorize on-track, pari-mutuel wagering were necessary only if the term "lottery" was understood to prohibit all schemes involving prize, chance and consideration.
The legislative council report to the criminal code revision in the 1950's indicated that the definition of lottery included in the code was a "restatement of the rule laid down by the supreme court. State ex rel. Regez v. Blumer, 236 Wis. 129,294 N.W. 491 (1940); State ex rel. Cowie v. La Crosse Theaters Co.,232 Wis. 153, 286 N.W. 707 (1939); 40 Ops. Atty. Gen. 438 (Wis., 1951)." Kayden Industries, 34 Wis.2d at 726 (quoting from
Wisconsin Legislative Council Reports, comment to 1953 Criminal Code draft of section 345.01(2)). I must, therefore, *Page 58 
conclude that the term "lottery" throughout article IV, section 24, refers to any game, scheme or plan comprising prize, chance and consideration.
Under the constitution, the Legislature may authorize any type of state-operated lottery subject only to the advertising, use-of-revenue and off-track wagering restrictions. The Legislature may not, however, authorize such lotteries if they are not operated by the state, or fall within the bingo, raffle or on-track, pari-mutuel exceptions. Any other lottery requires an amendment to the constitution.
In reaching this conclusion, I recognize that article IV, section 24(6) of the Wisconsin Constitution includes provisions relating to promotional advertising and the required use of lottery proceeds. Although these provisions unquestionably limit the Legislature's discretion regarding the administration and regulation of a state lottery, they do not in any way limit the scope of gaming which may be authorized by the Legislature. There is nothing in the language of the amendment to prohibit legislative authorization of casino-type games by the Lottery Board.
The Legislature has plenary power to legislate all laws not expressly prohibited by the constitution. Jacobs, 139 Wis.2d at 507. Although the constitutional requirement to disclose the odds of selecting a winning ticket may, as a practical matter, make implementation of some lottery games more difficult than others, it does not stand as an absolute barrier to games such as those involving casino-type gambling.
Nor do I view the use of the word "ticket" in the third sentence of article IV, section 24(6) of the Wisconsin Constitution as limiting the lottery to games employing a ticket as a method of determining the winner. The plain, ordinary definition of ticket is "a written, typed, printed, stamped, or engraved notice, record, memorandum, or token." Webster's Third New International Dictionary 2389 (1986). Under this definition, a ticket is evidence of participation in a lottery game. *Page 59 
The word ticket does not require that the ticket be in some way used in the play of the game or selection of the winner. Compare, e.g., the definition of raffle, chapter 163. Under the plain meaning of the word "ticket" as set forth above, a note, document or token in writing which serves as a permit to participate in any specific game would serve as a ticket within the meaning of the constitutional provision.
The Lottery Board currently operates three such games involving tickets. The instant game television show does not use the ticket to determine the amount of the prizes awarded on the television show. A ticket is used to determine the participants in the show. Megabucks and SuperCash tickets are memoranda of the numbers selected by the player. The winners are ultimately determined by mechanical selection of numbered balls.
The first legislation after the 1987 amendment authorized the Lottery Board to use lottery tickets or lottery shares. See secs.565.02(3)(b)5., 565.17, 565.27(1)(b) and 565.27(3), Stats. Section 565.02(3)(g) further gives the Lottery Board authority to define "lottery shares." This is compelling evidence that the Legislature did not view the constitutional reference to "tickets" as a restriction on the conduct of games.
The Legislature also contemplated that the Lottery Board could have conducted games in which the winners were determined by the outcome of a race or other sporting event. Enabling legislation for the state lottery provides that the Lottery Board shall promulgate rules "[d]etermining the types of lottery games to be offered under s. 565.27." Sec. 565.02(3)(d), Stats. Section565.27(1) provides:
 Subject to this section, the rules promulgated under s. 565.02(3)(d) and (4)(a) and board approval, the executive director shall determine the particular features of and procedures for each lottery game offered. The executive director shall recommend to the board for promulgation by rule under s. 565.02(3)(d) the types of *Page 60 
state or multistate lottery games to be offered, except that no game may be offered for which winners are selected based on the results of a race or sporting event.
There would have been no need for this provision if "lottery" in chapter 565 did not include betting on races or other sports betting.
It is my opinion that any lottery game which is not based on the outcome of a race or sporting event and which includes all of the elements of section 565.27(1)(a) through (f) may be authorized by the Lottery Board. While these requirements may make certain games more difficult or require modifications to meet the provisions of section 565.27(1), the only limitation contained in that section is on games involving races or sporting events. Language in similar statutes in another state has also been interpreted as a broad grant of authority. See Tichenor v.Missouri State Lottery Com'n, 742 S.W.2d 170 (Mo. en banc 1988).
Of course, the Legislature has the power to limit the type of games which the Lottery Board may permissibly authorize. Section565.27(1) already prohibits the Lottery Board from offering games "based on the results of a race or a sporting event." This exception could be expanded to prohibit card games, casino-type games or any other game the Legislature deems undesirable. The types of games the Lottery Board may offer is solely a legislative decision.
[1] The State of Wisconsin is currently a defendant in a lawsuit involving the issue of the gambling activities which must be the subject of negotiations between the state and Indian Tribes under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701,et seq., Lac du Flambeau Band of Lake Superior ChippewaIndians, et al. v. State of Wisconsin, et al., Case No. 90-C-0408-C. (United States District Court for the Western District of Wisconsin.) The issue in that litigation is different than the issue addressed in this opinion.
JED:WDW *Page 61