FRED A. RISSER, Chairperson Senate Organization Committee
The Senate Organization Committee has requested a formal attorney general's opinion regarding "the constitutionality of the Oneida Indian Tribe running a bingo game on television." Since this does not raise any questions of constitutional law, save under the Supremacy Clause of the United States Constitution, I assume that the Senate Organization Committee wishes my opinion on the legality of Oneida TV bingo.
Because of the pervasive aspect of the Indian gambling question, I begin with a general statement of the law concerning the state's ability to regulate Indian activities. Although generalizations on the subject of state regulation of Indians and Indian activity both on and off the reservation are treacherous,White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 141 (1980), the following is a guide for application of state regulation of Indians and their activities.
The tribes retain "attributes of sovereignty over both their members and their territory." United States v. Mazurie, 419 U.S. 544,557 (1975). There is no rigid rule by which to resolve the question of whether state law may be applied to an Indian reservation or to tribal members. The tribes have retained a "semi-independent" position, not as states or nations, but as a separate people with the power of regulating their internal and social relations and not brought under the laws of the union or of the state within whose limits they reside. McClanahan v. StateTax Commission of Arizona, 411 U.S. 164 (1973).
Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, article I, section 8, clause 3 of the *Page 333 
United States Constitution. "This congressional authority" and the "semi-independent position" of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be preempted by federal law. Second, it may unlawfully infringe
 "on the right of reservation Indians to make their own laws and be ruled by them." The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members. They are related, however, in two important ways. The right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. Even so, traditional notions of Indian self-government are so deeply engrained in our jurisprudence that they have provided an important "backdrop" against which vague or ambiguous federal enactments must always be measured.
White Mountain Apache Tribe, 448 U.S. at 142-43 (citations omitted).
Congress has chosen to regulate gambling on the reservation through the Indian Gaming Regulatory Act. 25 U.S.C.A. § 2701et seq. (West Supp. 1992). Under that act, bingo is a Class II activity which, when conducted on Indian lands, is not subject to regulation by the state but only by the National Indian Gaming Commission. 25 U.S.C.A. § 2710(b) (West Supp. 1992).
Off-reservation activities, while not completely without doubt, are more likely subject to state regulation. In Mescalero ApacheTribe v. Jones, 411 U.S. 145 (1973), the United States Supreme Court upheld a gross receipts tax on the Apache ski resort which was located off the reservation even though it was the *Page 334 
primary source of tribal income. The Court stated after much of the same statement of general law as above,
 tribal activities conducted outside the reservation present different considerations. "State authority over Indians is yet more extensive over activities . . . not on any reservation." Organized Village of Kake [v. Egan, 369 U.S. 60, 75 (1962)]. Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State.
Id. at 148-49.
The Wisconsin courts, relying on Mescalero Apache Tribe, have held that the state courts have jurisdiction to prosecute crimes committed by Indians off the reservation. Sturdevant v. State,76 Wis.2d 247, 251 N.W.2d 50 (1977). The supreme court in that case specifically referred to section 939.03(1)(a), Stats., which provides that a person is subject to prosecution and punishment under the law of Wisconsin if "[h]e commits a crime, any of the constituent elements of which takes place in this state." The statute further provides a person is subject to prosecution and punishment under Wisconsin law if "[w]hile out of this state, he does an act with intent that it cause in this state a consequence set forth in a section defining a crime." Sec. 939.03(1)(c), Stats.
In my opinion this interpretation comports with the United States Supreme Court pronouncements in Mescalero Apache Tribe andWashington v. Confederated Tribes of Colville, 447 U.S. 134
(1980). In Confederated Tribes, the Court invalidated an excise tax on the privilege of using state highways because the tax applied fully to Indian owned vehicles both on and off the reservation. In making the point pertinent here, the Court said that the tax might be valid if tied only "to the amount of actual off-reservation use." Id. at 163-64.
Our supreme court has stated the test for determining whether state law applies off the reservation as follows: "[T]he off-reservation *Page 335 
activities of Indians are generally subject to the prescriptions of a nondiscriminatory state law, in the absence of an express federal law to the contrary." State v. Big John,146 Wis.2d 741, 749, 432 N.W.2d 576 (1988).
It is my opinion that if at least one element of a Wisconsin crime occurs off the reservation, state law can be applied to prosecute a violation of that crime. For example, section945.02(3) requires the elements of prize, chance and consideration. If any one of these three elements occurs off of Indian lands, Wisconsin has jurisdiction to criminally prosecute. Exceptions to section 945.01(5)(am) exist only for bingo conducted under chapter 163 (soon to be chapter 563). I do not believe any federal law expressly prohibits Wisconsin from exercising its criminal jurisdiction over gaming that occurs, even in part, off Indian lands. The Indian Gaming Regulatory Act, by its legislative history, covers only gaming on Indian lands.25 U.S.C.A. §§ 2702(3), 2703(4) and 2710(a), (b) and (d) (West Supp. 1992). It does not establish the right of the Oneida or any other tribe to conduct gaming in part off Indian lands through activity which extends beyond the boundaries of these lands.
Nor does the regulation of broadcast media insulate the participants, players and tribal members or management companies from prosecution when one element of the crime occurs wholly separate from the broadcast itself. The attachments to your request indicate that the Oneida are using a 900 telephone number to facilitate play of TV bingo. Such use of the telephone may implicate sections 945.03(7) and 945.06. The purchase of bingo cards off Indian lands may also violate section 945.05(1)(a).
It appears that violations of Wisconsin's criminal statutes may be occurring through use of 900 and 800 number telephone lines and perhaps through use of the mails. However, it is also apparent that some of the sales of Oneida TV bingo may be entirely legal. Sales on the Oneida reservation or any other *Page 336 
Indian lands (even lands of other tribes) are not subject to Wisconsin's criminal jurisdiction if the sale, selection of the winner, award and claiming of the prize all occur on Indian land. The fact that an alternative legal means of participation may exist, however, does not insulate Oneida TV bingo from prosecution when an element of the crime actually occurs off Indian lands. See 60 Op. Att'y Gen. 382 (1971).
Whether a violation of Wisconsin's criminal gambling law has occurred can only be determined on the facts of each individual transaction. This determination is best left to the appropriate prosecuting officials. If the facts establish that any element of a Wisconsin crime is occurring off Indian lands, it is my opinion that Wisconsin has criminal jurisdiction to prosecute.
JED:WDW *Page 337