The Kimberly & Clark Company, Respondent, vs. Hewitt and others, Appellants.

*December 4, 1889 — January 7, 1890.*

*Equity: Injunction: Threatened injury: Water power.*

A complaint alleging that the defendants threaten to divert water from the plaintiff's water power, that they claim the right to do so, and that they will do so unless restrained, presents a case for the exercise of equitable jurisdiction to prevent the threatened injury.

APPEAL from the Circuit Court for *Outagamie* County. The case is stated in the opinion. The defendants appeal from an order overruling a general demurrer to the complaint.

*David S. Ordway,* for the appellants, to the point that equity will not interfere unless the threatened injury is imminent and irreparable, cited Kerr, Injunc. (Herrick's notes, 1871), 339, 340; Bispham's Equity, 492; *Judd v. Fox Lake,* 28 Wis. 583; *Pedrick v. Ripon,* 73 id. 625; *Sanders v. Yonkers,* 63 N. Y. 492; *Pettit v. Shepherd,* 5 Paige, 493; 3 Pom. Eq. Jur. sec. 1350.

For the respondent there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.* They contended, *inter alia,* that a threat to divert a watercourse, with the power and intention to execute it, is enough to move a court to restrain. *Wilson v. Mineral Point,* 39 Wis. 160;

*McArthur v. Kelly*, 5 Ohio, 139; *Loudon v. Warfield*, 5 J. J. Marsh. 196, 197; *Diamond Match Co. v. Ontonagon*, 40 N. W. Rep. (Mich.), 448, 454; *Meadow Valley Mining Co. v. Dodds*, 6 Nev. 261, 264; *Lyon v. McLaughlin*, 32 Vt. 423, 425; Story's Eq. Pl. (9th ed.), sec. 9; Story's Eq. Jur. secs. 825, 826; 2 Daniel's Ch. Pl. & Pr. 1641; 1 High, Injunc. sec. 18; *Gardner v. Newburgh*, 2 Johns. Ch. 165. On account of the peculiar nature of running water, and the fact that, in a certain sense, possession of it cannot be had, equity takes jurisdiction to determine in advance the right to use it. Equity often interferes where it would not interfere if the subject matter of the controversy were land. *Patten Paper Co. v. Kaukauna W. P. Co.* 70 Wis. 659, 667, 668; *Lawson v. Menasha W. W. Co.* 59 id. 393, 397, 398; Pom. Rip. R. sec. 154; Angell, Watercourses, secs. 445–448; *Fisk v. Wilber*, 7 Barb. 395, 400; *Pollitt v. Long*, 58 id. 20, 34, 35; *Bemis v. Upham*, 13 Pick. 171; *Fry v. Lowden*, 70 Cal. 550, 551; *Belknap v. Trimble*, 3 Paige, 577, 597–8, 605–6.

COLE, C. J. The complaint alleges that the plaintiff is the owner of the Cedars water power on the Fox river, and owns a dam and the land on which it rests, together with both dam landings, including also lands extending some 100 feet or more above and below the dam; that it entered into the possession of said land, and of said dam, and of said water power, November, 1888, its possession of said water power being had by and through the fact that all of the water of said river, except that required for the purpose of navigation, runs and falls over the dam aforesaid on its land. It then states that the principal defendants own lands on the north side of the river, reaching from a point on the river above plaintiff's dam landing around to the river below, on which a canal might be built to draw the water of the river, for hydraulic power, from the mill-pond main-

tained by the dam, around the north dam landing, and return the same to the river below; that the defendants give out and claim that, as riparian owners, they are entitled to construct a race leading from a point above the government canal described, and above the dam, extending around the canal and dam into the river below, and through such race to draw and use one half the water of the Fox river appurtenant to the north bank thereof, and to draw one half stored and held in the mill-pond maintained by the dam, from the river above said dam and above the land of the plaintiff, and return the same to the river below the canal and dam and below the plaintiff's land, thereby appropriating one half the power created by the flow of the water at and over the dam for hydraulic purposes, by carrying the same over their own land around the plaintiff's land and around the dam which abuts thereon. It is further alleged that the plaintiff desires to erect mills and factories to be run by the water power created by the dam, which will require all the hydraulic power furnished by the dam and the river, and without the use of the whole of said water such mills will be practically worthless. It is then stated that the defendants threaten to, and will, as the plaintiff is informed and believes, unless restrained by the judgment of the court, build a canal across their land, opening into and reaching from the waters of the river above the mouth or inlet of the government canal, down to the river below the foot or outlet of the canal, and will draw through the same a large part of the water of the river for use for hydraulic purposes. The relief asked is that the court adjudge that the defendants have no right to draw water for hydraulic power from the mill-pond, and that they be restrained from drawing water for hydraulic power from the mill-pond, and from setting up or claiming any such right. The complaint was demurred to on the ground that it states no cause of

action.   To this objection the plaintiff's counsel gives several answers.

First, he says the complaint states a cause of action under sec. 3186, R. S., because it alleges ownership and possession of the land and the water power appurtenant or incident thereto.   It is certainly true that possession is alleged of the land and of the water power; that is, all the possession which could be predicated of any water power not in actual use as such, that is to say, possession of the dam over which, and the banks between which, the water runs. But it is said, to bring a case within the statute the plaintiff must have the legal title and be in actual possession of the land to which the defendant makes some claim, but that it appears from the complaint that the defendants make no claim to the land in the possession of the plaintiff, but only make a verbal claim to the right to take out, or rather divert, the water above the plaintiff's land, and return it to the river below the same.   It admits of grave doubt whether the statute was intended to cover such a case as is here presented.   It may be conceded that a water power, used or unused, is included within the meaning of the word "land;" but, as the facts show that the defendants make no claim to such power, but only claim the right to divert a part of the water from the dam and power, does such a case come within the meaning and intent of the statute?   We are not now prepared to say that it does.   There would seem to be still greater difficulty about sustaining the complaint on the facts as one to quiet title under the general equity powers of the court.

It is said that parties wishing to build mills on their own lands, and enjoy the use of a water power thereon, ought not to be compelled to risk the value of such improvements on a disputed title to the power; that the plaintiff can maintain no action at law to determine the validity of the

defendants' claim to one half the power, and that to say the plaintiff must wait until the defendants actually divert the water or perpetrate the wrong is unreasonable. Where an injury is irreparable, its commission will be enjoined, if it is of such a nature that it cannot be adequately compensated in damages, or where it cannot be measured by any certain pecuniary standard. This principle is laid down and enforced in *Wilson v. Mineral Point*, 39 Wis. 160. Gould on Waters says: "It is settled in England and America that where irreparable injury is threatened it is not necessary for the plaintiff to wait until some injury has been done before filing his bill, but that equity will take jurisdiction to prevent, if possible, any injury." Gould, Waters, § 513. The learned author refers to many cases in note 4 which fully sustain the test. High states the law as follows: "The remedy by interlocutory injunction being preventive in its nature, it is not necessary that a wrong should have been actually committed before a court of equity will interfere, since, if this were required, it would in most cases defeat the very purpose for which the relief is sought, by allowing the commission of the act which complainant seeks to restrain; and satisfactory proof that defendants threaten the commission of a wrong which is within their power is a sufficient ground to justify the interference." 1 High, Inj. § 18. To this proposition he cites *McArthur v. Kelly*, 5 Ohio, 139, which is directly in point. Counsel attempted to distinguish that case on the ground that the defendants were land commissioners, acting officially under an act of the legislature; but that fact, it seems to us, affords no reason for restraining their action, but the contrary. *Vanwinkle v. Curtis*, 3 N. J. Eq. 422, holds, in cases of trespass or nuisance, an injunction will not be granted unless the injury about to be committed is of a serious, permanent, and irreparable character, such as cannot well be compensated in damages, and which therefore requires

the extraordinary power of chancery to prevent its commission. *Lyon v. McLaughlin*, 32 Vt. 423, was an action brought for the invasion of a right in the use of a watercourse, which was threatened or intended. The court say: "It would seem to be well settled, as shown by the textbooks and the cases, that when the invasion of a right in this kind of property is threatened and intended, which is necessarily to be continuing and operative prospectively and indefinitely, and the extent of the injurious consequences is contingent and doubtful of estimation, the writ of injunction is not only permissible, but is the most appropriate means of remedy. It affords, in fact, the only adequate and sure remedy; for the very doubtfulness as to the extent of the prospective injury, and the impossibility of ascertaining the measure of just reparation, render such injury irreparable in the sense of the law relating to this subject." See, also, *Gardner v. Newburgh*, 2 Johns. Ch. 162. It is admitted that it is not necessary for a party to delay bringing a suit until after a nuisance is actually perpetrated, where the facts show an ability and a purpose to proceed at once in the unlawful undertaking. This concession is a sufficient ground for sustaining the complaint; for it is alleged that the defendants threaten to divert the water, claim they have both the right and the ability to do it, and will, unless restrained. Within the authorities, the facts present a case for the exercise of equitable jurisdiction to prevent the threatened injury (*Attorney General v. Forbes*, 2 Mylne & C. 123; *Webb v. Portland Mfg. Co.* 3 Sum. 189; Angell on Watercourses, ch. X, subd. 11), the province of the injunction being to prevent future mischief; and where the right to do the wrong is insisted upon, the court will interfere and protect the plaintiff. It follows from these views that the order of the circuit court overruling the demurrer must be affirmed.

*By the Court.*— Order affirmed.