STATE EX REL. FAIRCHILD, Attorney General, Appellant, vs. WISCONSIN AUTOMOTIVE TRADES ASSOCIATION, Respondent.*

*January 20—April 12, 1949.*

---

\* Motion for rehearing denied, without costs, on June 7, 1949.

For the appellant there was a brief by the *Attorney General* and *William E. Torkelson,* assistant attorney general, and oral argument by *Mr. Torkelson.*

For the respondent there was a brief by *Drought & Grootemaat* of Milwaukee, attorneys, and *Charles W. Sterling* of St. Paul, Minnesota, of counsel, and oral argument by *Mr. Ralph J. Drought* and *Mr. Sterling.*

HUGHES, J.   The respondent is a nonstock, nonprofit corporation organized under the laws of this state with its principal office in Madison, Wisconsin.   In June of 1947 its membership was approximately sixteen hundred.   With a few exceptions the members are automobile dealers located in the state of Wisconsin.

In June of 1947 the respondent association notified its members that it was offering a collection service under the name of Automotive Credit Protective Bureau "to assist you to collect your accounts."   The plan provided that any member desiring the service of the association should forward the names of his debtors to the Protective Bureau which would send a series of letters to the debtor urging and cajoling him to pay his indebtedness directly to his creditor.   The cost to the member for service charge and commission was: Thirty-five accounts, $35 plus twenty per cent of amount collected; one hundred five accounts, $100 plus twenty per cent of amount collected.

There is no dispute as to the facts.   It is conceded that the association was using the "I. C. System," a copyrighted credit

system consisting of a series of letters drafted in a manner calculated to induce payment by the debtor.

J. A. Erickson, Jr., is the owner of the copyright and the I. C. System. The association had an agreement with him whereby it bound itself to try to sell the service to its members and agreed to pay him an amount equal to ten per cent of its earnings from contracts with its members.

Prior to May 29, 1940, Erickson had brought action in the circuit court for St. Croix county against H. F. Ibach, Frank H. Bixby, and A. J. Pflugradt, as members of and constituting the banking commission of Wisconsin, and Wade K. Halverson, district attorney of St. Croix county, for declaratory relief. On May 29, 1940, declaratory judgment was entered by the circuit court in that action, holding that the business conducted by Erickson did not constitute the operation of a "collection agency" as defined in sec. 218.04, Stats.

Secs. 218.04 (1) and (1) (f), Stats., in so far as material here, provide:

"(1) The following terms, as used in this section, shall have the meaning stated, unless the context requires a different meaning: . . .

"(f) 'Collection agency' means any person engaging in the business of collecting or receiving for payment for others of any account, bill or other indebtedness. . . ."

It is contended that the decision of the circuit court is *res adjudicata* as binding upon the parties to this action because the defendants in the St. Croix case were representatives of the state as is the attorney general in this action; that since that judgment was not appealed from it is determinative of the question here.

Respondent next contends that if *res adjudicata* does not apply, the doctrine of *stare decisis* governs.

Because of the view which we take of the procedural question here presented it will not be necessary to discuss these questions or the merits of the case.

The proceeding was brought under sec. 294.04 (1) (a), Stats., which permits such action to be brought,—

"When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state. . . ."

"Franchise" is defined in Bouvier's Law Dictionary as "A special privilege conferred by government on individuals, and which does not belong to the citizens of the country generally by common right."

The creation of a corporate entity, and the right to dam or otherwise interfere with public waters are clear examples.

"License" is defined as, "Authority to do some act or carry on some trade or business, in its nature lawful but prohibited by statute, except with the permission of the civil authority or which would otherwise be unlawful."

The definitions set out the underlying difference between the two. In the cases generally there appears to be some confused use of the term "privilege" as synonymous both with "franchise" and "license" which might lead to the conclusion that "franchise" and "license" are the same.

In *State ex rel. Attorney General v. Portage City Water Co.* (1900), 107 Wis. 441, 444, 83 N. W. 697, the action was for forfeiture or annulment of defendant's franchise to operate a waterworks because of failure of the defendant to perform some of its duties in operation. It was there held that the corporation had been granted a franchise, but this court in discussing the law said:

"It is conceded that unless the privileges granted by the city of Portage to construct, maintain, and operate a system of waterworks within its corporate limits, and use the streets and alleys of the city for that purpose, constitute a franchise emanating from sovereign authority, this action will not lie either under the statutes or independent of them."

Except for the restrictions placed upon the right by the legislature in the interests of the public welfare, anyone might engage in the business of a collection agency. Under the statute anyone who complies with the statutory requirements may engage in such business. The license issued to those who qualify does not constitute a franchise. The trial court correctly determined that *quo warranto* is not the proper remedy.

We next consider whether the court was in error in considering the action to be one for injunctive relief and in dismissing the complaint because it determined that the respondent was not operating a collection agency.

The law is well settled that equitable relief will not be granted where the legal remedy is adequate. *Janesville v. Carpenter* (1890), 77 Wis. 288, 46 N. W. 128; *Holzbauer v. Ritter* (1924), 184 Wis. 35, 198 N. W. 852; *Caeredes v. Platteville* (1933), 213 Wis. 344, 251 N. W. 245.

"Any attempt of equity to restrain purely criminal acts would be a denial to the defendant of his right to a trial by jury." 28 Am. Jur., Injunctions, p. 337, sec. 148.

A court of equity ordinarily will not interfere by injunction to restrain the commission of a criminal act or to restrain the violation of public or penal statutes. *Tiede v. Schneidt* (1898), 99 Wis. 201, 74 N. W. 798; *People ex rel. L'Abbe v. District Court* (1899), 26 Colo. 386, 58 Pac. 604, 46 L. R. A. 850. See also Anno. 40 A. L. R. 1145; Anno. 91 A. L. R. 315.

The mere criminality of an act neither gives nor ousts the jurisdiction of equity. Equity exercises jurisdiction over the act as a nuisance as distinguished from a crime. 46 C. J., Nuisances, p. 763, sec. 370.

"The entire equity of the case depends upon the question of nuisance." *Tiede v. Schneidt, supra,* p. 211.

There is no claim that the acts of the respondent constitute a nuisance, public or private.

We are of the opinion that the trial court properly dismissed the complaint. It should have been, however, upon the ground that there was no cause for exercising equitable jurisdiction, rather than upon the merits. In justice to the trial court we are constrained to say that the jurisdictional question was not there vigorously raised.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.

* Motion for rehearing denied, with $25 costs, on June 7, 1949.