STATE EX REL. ABBOTT, as President of WISCONSIN BOARD OF EXAMINERS IN OPTOMETRY, Respondent, vs. HOUSE OF VISION-BELGARD-SPERO, INC., Appellant.

*March 8—April 3, 1951.*

For the appellant there was a brief by *Spence & Herbon,* attorneys, and *Stephen C. deVries* and *Daniel J. Brodell* of counsel, all of Milwaukee, and oral argument by *Mr. Arthur T. Spence* and *Mr. deVries.*

For the respondent there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwaukee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

FRITZ, C. J.   The material facts and the issues are briefly but completely stated in the memorandum decision of the learned trial court as follows:

"Demurrer to complaint. Plaintiff in its complaint alleges that the defendant, a foreign corporation, is guilty of public nuisance in Milwaukee county and seeks a temporary injunction restraining defendant, its agents and servants, from continuing in said alleged public nuisance.

"The issues are: (a) Does the complaint fail to state as cause of action for the reason that the facts, as alleged, are not sufficient to establish a public nuisance?

"(b) Is the plaintiff incapacitated to sue in that the relator is not a 'private individual?'

"An examination of the complaint discloses, amongst other things, that the plaintiff by its allegations of ultimate fact in the complaint charges that the defendant is engaged in the

perpetration of a continued and repeated public nuisance, in that particularly it engages unlicensed persons to practice optometry for its benefit; in that it unlawfully advertises that its servants possess superior qualifications to those of licensed optometrists in the community; in that its advertising is misleading and deceiving, to the detriment of that portion of the public which deals with the defendant; in that it engages in conduct likely to deceive or defraud the public. By its complaint the plaintiff does not seek to attempt to enjoin any individual from 'practicing his profession.'

"The defendant maintains that the facts alleged in the complaint are not sufficient to constitute a public nuisance. A public nuisance is defined as the doing or the failure to do something that injuriously affects the safety, *health,* or morals of the public. In Wisconsin, optometry is regulated by statute to protect the *health* and *welfare* of the public. The state's right of such regulation is under its police power. The state prohibits the unlicensed practice of optometry under penalty. (Sec. 153.11, Stats.) It prohibits unprofessional conduct in optometry by not permitting conduct of a character likely to deceive or defraud the public. (Sec. 153.08, Stats.) It prohibits advertising that will tend to mislead or deceive the public, or advertising of superior qualifications; or to render any optometric service pursuant to such advertising. (Secs. 153.10 and 153.11, Stats.)"

The trial court overruled defendant's demurrer to the complaint and defendant has appealed. It submits the same propositions upon which it relied below. It concedes that equity may enjoin violations of penal statutes if such violations also constitute a public nuisance, but it says that the violation alone is insufficient to establish the nuisance and the complaint does not allege any other facts essential to show the existence of a public nuisance, for example that the unlicensed individuals are in fact incompetent and harm their patrons, the public.

In *State ex rel. Attorney General v. Thekan* (1924), 184 Wis. 42, 198 N. W. 729, we dealt with a proposal to enjoin as a public nuisance the operation of premises where intoxicants were manufactured and sold in violation of the United

States constitution and statutes and the Wisconsin statutes. The latter, besides prohibiting such conduct, by sec. 165.01 (22), Stats. 1923, designated it a public nuisance. We said, page 46, "Independent of the provisions of sub. (22) of sec. 165.01, in view of the public policy of the nation and of the state, the continued use of premises for the manufacture, sale, and possession of intoxicating liquors contrary to law would constitute such premises a public nuisance." In *State ex rel. Cowie v. La Crosse Theaters Co.* (1939), 232 Wis. 153, 286 N. W. 707, the action was one to abate as a nuisance the theater's practice of holding "bank nights" on the ground that thereby the theater was conducting a lottery. Having determined that a bank night was a lottery in violation of sec. 24, art. IV, Const., we held that, as such, it was a public nuisance, saying, page 161, "While most of the cases supporting abatement of public nuisances involve acts declared such nuisances by statute, abatability as a nuisance does not depend on statutory declaration, but abatement lies if the thing in absence of statutory declaration is in fact a public nuisance," and we quoted 5 Pomeroy, Eq. Jur. (2d ed.), p. 4296, sec. 1893, ". . . wherever a public nuisance is shown, equity must enjoin it at the suit of the government. *'Every place where a public statute is openly, publicly, repeatedly, continuously, persistently, and intentionally violated, is a public nuisance.'*"

The present complaint effectively alleges the violation of ch. 153, Stats., openly, publicly, persistently, and intentionally. The question really is whether we shall apply the law as we declared it to be in *State ex rel. Attorney General v. Thekan, supra,* and *State ex rel. Cowie v. La Crosse Theaters Co., supra.* Appellant points out that in the *Thekan Case* the statute designated the operation to be a public nuisance and our declaration, that such designation was superfluous, was dicta and is not binding upon us now; and that the *Cowie Case* should be distinguished from the one at bar because lotteries cannot be conducted lawfully at all whereas

the practice of optometry is recognized as beneficial and is merely regulated, wherefore we may confine the application of the *Cowie Case* definition of public nuisance to those activities absolutely and completely prohibited and should not extend it to include enterprises which are only conditionally forbidden. But the *Thekan* and *Cowie Cases* received much study when they were before us and have been re-examined now and we conclude that the language of their opinions, broad as it is, expresses our view of the law and is applicable to acts repeatedly performed and with the avowed purpose of continuing, which do violate a statute whether or not they might be lawful under other and different circumstances. Consequently, we hold that if the statutes are violated as charged in the complaint a public nuisance is committed and the equitable remedy of injunction may be invoked. Therefore the complaint sets forth a cause of action.

However, we have concluded that the demurrer should have been sustained on the ground that the plaintiff lacks legal capacity to sue. The action is not prosecuted in the name of the state by the attorney general upon his own information nor upon the relation of a private individual or a county and they are the only alternatives permitted by sec. 280.02, Stats., under which these proceedings are had.

Appellant submitted below and here that this action is on relation of the board of optometry. If it is, there can be no question that the relation is fatally defective as outside the permission of sec. 280.02, Stats. The learned trial court did not consider the board to be the relator, saying:

"It appears from the complaint that this action was commenced in the name of the state upon the relation of a private individual, after leave had been first obtained from the court. The action is not on the relation of a public agency, to wit: The Wisconsin board of examiners in optometry, but on relation of Augustus N. Abbott, an individual, who incidentally is the president of the Wisconsin board of examiners in optometry."

Undoubtedly Augustus N. Abbott has a private capacity and when he acts within it his acts are those of a private individual, but he has an official capacity, too, and when he assumes that character his acts are those of an official, not a private person, and consequently of one not qualified by sec. 280.02, Stats., to make relation in an action to enjoin a public nuisance. To discover in what guise he acted in this proceeding we must search the record.

Mr. Abbott's petition for leave to commence an action recites:

"Petitioner alleges that he is the president of the Wisconsin board of examiners in optometry, which board is created by sec. 153.03 of the Wisconsin statutes.

"Petitioner further alleges that under paragraph (6) of sec. 153.03 it is made the duty of the president or secretary of said board to cause an action to be instituted for violation of this chapter."

The resulting order states:

"It is ordered, that leave is hereby granted to the said Augustus N. Abbott, as president of the Wisconsin board of examiners in optometry, to commence an action against the House of Vision-Belgard-Spero, Inc., . . ."

Then followed the complaint where it is alleged:

"6. That your relator is the duly appointed and qualified president of the Wisconsin board of examiners in optometry and has commenced this action on behalf of said board of examiners in optometry and the state of Wisconsin to enjoin the actions of the said defendant hereinafter more particularly referred to."

If this is not an action commenced by an official in his official capacity, what are all these allegations of officialdom doing in the case? If it should be conceded that relator wished to proceed as an official what form of words could he have used more effective to say so than those he uses here? Considering how the relator is qualified and described

we are unable to see him as a simple private individual. He was granted leave to commence the action as an official and as an official acting in behalf of his board he did begin it. The statute, which must be construed strictly, does not permit the action to be brought on relation of an official body except a county, which rules out the board as relator, nor on relation of any official except the attorney general, which rules out Mr. Abbott when he appears in the robes of office. The leave to begin the action should not have been granted to him in an official capacity and when the like defect, appearing in the allegations of the complaint, was pointed out by demurrer, the demurrer should have been sustained for lack of plaintiff's capacity to sue.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

BROWN, J. (*concurring*). I concur in that part of the opinion which holds that the plaintiff lacks capacity to sue but I cannot agree with the majority in holding that the complaint states a cause of action.

This is not because I fail to recognize that the case is embraced in the language of *State ex rel. Attorney General v. Thekan* (1924), 184 Wis. 42, 198 N. W. 729, and *State ex rel. Cowie v. La Crosse Theaters Co.* (1939), 232 Wis. 153, 286 N. W. 707. It is because I do not think the resort to injunction to by-pass the criminal law with its presumption of the defendant's innocence and its trial by jury is a proper procedure or one to be resorted to except perhaps in cases where the protection of society by prosecution for crime has clearly failed. I do not regard the present case to be so extreme and do not think that the doctrine of the *Thekan* and *La Crosse Theaters Co. Cases* should be extended to control cases which can be distinguished from them in material respects. The present action is such a one, in that the legislature has not declared the alleged violation here to be a public nuisance, as it had in *Thekan,* nor are the acts which

the defendant's employees are accused of performing of such a nature that they cannot lawfully be performed as in *La Crosse Theaters Co.* Here the act is all right; the vice is only that the actor is unlicensed, which is not coextensive with lack of skill but may be for many a reason under the statute,—even that he does not happen to have $35. (Sec. 153.05, Stats.)

Contemplating the possibility that the law might be broken, what did the legislature do? By sec. 153.11, Stats., it prescribed punishment for a first offense by a fine from $50 to $200 or imprisonment for not more than three months, or both; and for a subsequent offense a fine of from $200 to $500 or imprisonment of not less than three nor more than six months, or both.

"The law is well settled that equitable relief will not be granted where the legal remedy is adequate. . . .
" 'Any attempt of equity to restrain purely criminal acts would be a denial to the defendant of his right to a trial by jury. . . .'
"A court of equity ordinarily will not interfere by injunction to restrain the commission of a criminal act or to restrain the violation of public or penal statutes:" *State ex rel. Fairchild v. Wisconsin Auto. Trades Asso.* (1949), 254 Wis. 398, 402, 37 N. W. (2d) 98, citing authorities.

To this the state replies that the remedy under the criminal statutes is inadequate for two reasons, (1) that the penalties are insufficient to prevent repetition of the offense and (2) that the difficulties of successful prosecution are prohibitive. No past convictions followed by a resumption of forbidden practices are alleged in the complaint nor were they presented in argument. The relator does not think the penalty of a $500 fine and six months in jail is sufficient to deter offenders. I may think it is, but the thoughts of either are immaterial. What counts is the thought of the legislature. It said that those penalties were appropriate to the offense. There is no experience to the contrary and without

allegations based on experience that the penalties do not deter, the unsupported conclusion, that the legal remedy is inadequate, is not entitled to weight.

Then there is the contention, advanced in the argument, of the difficulty of prosecution under the criminal statutes. The complaint alleges that defendant conducts its business on the ground floor of premises in the principal business district of the city of Milwaukee and alleges that the offenses in question constitute the daily practice of said defendant and are repeated and continuous violations of the statutes, that defendant has so offended constantly for more than eight years, and that the unlawful actions make up the greater portion of its business. This being true, as the demurrer requires us to accept, it would not seem that an industrious detective would experience great difficulty in securing evidence upon which a competent prosecutor would obtain a conviction. Since the criminal statutes do not appear ever to have been invoked, I am not much impressed by the reasons given for not using them to support the state's claim that there is no adequate remedy at law. The state also argued that the defendant is a corporation and therefore cannot be imprisoned, wherefore, they say, another inadequacy of the legal remedy appears. But as a corporation, if it is a domestic one and habitually violates the law in the conduct of its business, its charter may be forfeited and if it is a foreign corporation its license to do business in the state may be revoked. The state need not complain that it cannot imprison when it has the power to inflict death or exile.

The course the state has adopted in this action contemplates proof of guilt sufficient to satisfy a judge (not a jury) by a preponderance of the evidence (not beyond a reasonable doubt), and, for a second offense so proved, punishment not as directed by statute for the crime but as selected by the judge for contempt of court. I cannot find in the complaint justification for so drastic a process. On the ground

that the complaint did not state facts sufficient to constitute a cause of action, as well as on the ground that plaintiff lacked capacity to sue, the demurrer should have been sustained.

I am authorized to say that Mr. Justice HUGHES and Mr. Justice GEHL join in this opinion.