STATE, Appellant, v. H. SAMUELS COMPANY, INC., Respondent.

*No. 172. Argued October 1, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 417.)

For the appellant the cause was argued by *Paul J. Gossens,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Miller & Miller* of Portage, and oral argument by *Arno J. Miller.*

HALLOWS, C. J.   Several issues are raised in the briefs, but the only one which is dispositive of the case is whether the repeated violation of a city ordinance constitutes a public nuisance which ought to be enjoined.

H. Samuels Company, Inc., has operated a salvage business in block 137 in the city of Portage since the

early 1900's. In 1948 the junk business was expanded to include the salvaging of metals from automobiles and other machinery. Cranes were used after 1949, a guillotine shears after 1966, and a hammer mill about 1971. At one time Samuels operated around the clock, but at the time of trial the operation at night had been reduced. In the processing of scrap metal, Samuels utilized railroad cars, trucks, heavy duty cranes, guillotine shears, oscillators, conveyor belts, air tools, hammer mill, and metal-sorting equipment. Prior to 1966, block 137 was zoned commercial and light industry, but in 1966 the zoning was changed to heavy industrial. Block 137 is the only block so zoned in the developed portion of Portage. The areas immediately adjacent to block 137 are zoned either residential, single-family homes or commercial and light industry.

The defendant has a license to operate a junk yard. In its operation, the defendant unloads scrap metal from railroad cars with a magnetized crane and drops the metal into a steel guillotine shears which snaps the metal and drops it onto an oscillating conveyor belt, which in turn drops it on a pile or to a sorting house. Other operations involve a two-ton magnet lifting a car engine to the height of four feet and dropping it onto a large piece of steel wedged into the ground. Air tools are used to dismantle the engines and the hammer mill is used to hammer metal into pieces in a large drum and to drop them on a conveyor belt where they are washed and sorted. The alleged nuisance consists of the air noise and ground vibrations created by the operation.

The city of Portage has an ordinance prescribing maximum permissible noise and vibration levels. The state contended the Samuels company has repeatedly violated this ordinance and will continue to do so to the injury of the public. At the trial the state of Wisconsin attempted to prove the alleged nuisance by the testimony

of two expert witnesses who monitored the noise and by the testimony of neighborhood homeowners of the disruption of their life patterns. The homeowners testified to their loss of sleep, domestic discord, added expense in remodeling their homes, suspension of home remodeling, moving from the neighborhood, rattling of windows, loss of hobbies such as working out of doors, loss of use of porches and yards for relaxation, shaking of pictures and furniture, shaking of beds and rattling of dishes. The two experts testified their tests showed that at various times the sounds caused by the operation exceeded the maximum permissible decibel levels and sound frequencies established by the city ordinance of Portage. They also testified that the vibrations emanating from the salvage yard exceeded permissible displacement values prescribed by the ordinance for areas zoned heavy industrial.

The defendant's testimony consisted of the testimony of the chief of police who related that of the 32 complaints received in 1970, 24 were by one person and the rest by four persons; in 1971, of the 47 complaints, 38 were from one party and the balance from seven other persons. No action on behalf of the city of Portage has been taken to enforce the city ordinance against Samuels. The president of Samuels testified he has equipped his cranes with silencers, that he has reduced his operation, and intends to reduce the handling of automobiles in the future. In the area where defendant's plant is located, there are other industrial plants.

In its decision the trial court stressed that an injunction to enjoin a public nuisance was a drastic remedy, that the city of Portage had never brought an action for the violation of the ordinance against the defendant and "the defendant had taken considerable steps to improve the situation" and was operating a legitimate business where it had been carried on for many years. The court acknowledged the operation of the defendant's plant "is

obviously an annoyance to the immediate neighbors." However, the court was impressed by the reasoning in the concurring opinion in *State ex rel. Abbott v. House of Vision* (1951), 259 Wis. 87, 47 N. W. 2d 321, to the effect that before an injunction will issue when a statute has been violated an effort must first be made to prosecute for the violation of the statute, as this remedy is presumably adequate. The court also considered some economic factors although it is stated they were not directly involved, and commented that if an injunction to enjoin the nuisance required the defendant to stop operation, that would be the taking of defendant's property without adequate compensation and therefore unconstitutional. The court concluded the case did not constitute such a case as called for the use of an injunction.

We think the trial court was in error. A public nuisance may be proved by a few witnesses. It is the extent and the nature of the acts and the resulting damage which are important, not the number of witnesses. The court questioned the accuracy of the tests performed by the state's experts by presuming noise from sources other than the Samuels' plant contributed to the result of the tests. The presumptions are contrary to the testimony and the evidence. The fact the defendant has made some efforts to cut down the amount of noise does not go to the question of the existence of a nuisance. A defendant may use all the means possible in the operation of a legitimate business and yet that operation can cause damage and constitute a nuisance. Neither the legitimacy of the business nor the length of time it has been in existence is controlling in determining whether a public nuisance exists. These factors are relevant to the question of whether the court should exercise its discretion to enjoin the nuisance. The reliance on the concurring opinion in *State ex rel. Abbott v. House of*

*Vision, supra,* is misplaced. The concurring opinion is really a dissent on the issue of whether a nuisance existed and whether a crime was enjoined because it is a crime. This dissent relied on *State ex rel. Fairchild v. Wisconsin Automotive Trades Asso.* (1949), 254 Wis. 398, 403, 37 N. W. 2d 98. But the language in *Fairchild* must be read in the context of its facts and the express statement, "There is no claim that the acts of the respondent constitute a nuisance, public or private."

True, a court of equity will not enjoin a crime because it is a crime, *i.e.,* to enforce the criminal law, but the fact the acts complained of cause damage and also constitute a crime does not bar injunctional relief. The criminality of the act neither gives nor ousts the jurisdiction of equity. *State ex rel. Fairchild v. Wisconsin Automotive Trades Asso., supra;* 58 Am. Jur. 2d, *Nuisances,* p. 717, sec. 143. In such cases, equity grants relief, not because the acts are in violation of the statute, but because they constitute in fact a nuisance. 58 Am. Jur. 2d, *Nuisances,* p. 724, sec. 146; *see* dissent in *State v. Texaco* (1961), 14 Wis. 2d 625, 111 N. W. 2d 918. *See also:* Dobbs, *Remedies,* p. 115, sec. 2.11, Injunctions against Crime.

This view must be distinguished from the doctrine that the repeated violation of a criminal statute constitutes per se a public nuisance. This doctrine justifies the issuance of an injunction not to enforce the criminal statute but to enjoin illegal conduct which, because of its repetition, constitutes a nuisance. Under this doctrine, a violation or a threatened violation of the statute does not constitute a. nuisance. The violations of the statute must take place and be repeated to the extent their repetition affects such public rights as will constitute a nuisance.

In the majority opinion of *State ex rel. Abbott v. House of Vision, supra,* in referring to *State ex rel. Attorney General v. Thekan* (1924), 184 Wis. 42, 198 N. W. 729,

and *State ex rel. Cowie v. La Crosse Theaters Co.* (1939), 232 Wis. 153, 268 N. W. 707, this court said at page 92:

"But the *Thekan* and *Cowie Cases* received much study when they were before us and have been re-examined now and we conclude that the language of their opinions, broad as it is, expresses our view of the law and is applicable to acts repeatedly performed and with the avowed purpose of continuing, which do violate a statute whether or not they might be lawful under other and different circumstances. Consequently, we hold that if the statutes are violated as charged in the complaint a public nuisance is committed and the equitable remedy of injunction may be invoked."

The modern concept of injunctional relief is to use it when it is a superior or more effective remedy. This concept is illustrated by the many statutory provisions using an injunction to enforce sanctions and regulations in the commercial world. While the *Thekan* and the *Cowie Cases* might be distinguished, their broad language supported this court's view in *State v. J. C. Penney Co.* (1970), 48 Wis. 2d 125, 179 N. W. 2d 641, upon which this court enjoined repeated violations of a usury statute on the ground that the open, notorious, and flagrant violation of valid laws enacted for the benefit of the people of this state constituted a public nuisance. The court took judicial notice of the widespread use of the revolving-charge accounts and the large number of Wisconsin citizens affected by these practices, and thus concluded the violations were a public nuisance which ought to be enjoined.

It would seem this court is now committed to the proposition that the repeated violation of criminal statutes constitutes per se a public nuisance. But whether such nuisance should be enjoined depends upon the amount of damages caused thereby and upon the application of the doctrine of the balancing of equities or comparative injury in which the relative harm which would

be alleviated by the granting of the injunction is considered in balance with the harm to the defendant if the injunction is granted. If the public is injured in its civil or property rights or privileges or in respect to public health to any degree, that is sufficient to constitute a public nuisance; the degree of harm goes to whether or not the nuisance should be enjoined. The abatement of a nuisance by an in rem action is to be distinguished as those cases generally involve a statutory declaration of what conduct constitutes a public nuisance and a statutory authorization for abatement against the property, *i.e.*, secs. 280.09 and 280.13, also secs. 280.20, 280.21, and 280.22, Stats.

In *Jost v. Dairyland Power Cooperative* (1969), 45 Wis. 2d 164, 172 N. W. 2d 647, this court reviewed the theory of public nuisance in the context of a suit for damages. The court relied on *Pennoyer v. Allen* (1883), 56 Wis. 502, 14 N. W. 609, in which it was stated it was no defense to show that the business was conducted in a reasonable and proper manner, and that the injury might have been done with more aggravation. The court emphasized that the destruction of the enjoyment of the plaintiffs of the comfort of their homes furnished the ground for action. It was pointed out that the lawfulness of the business did not justify the invasion of private rights. In *Dolata v. Berthelet Fuel & Supply Co.* (1949), 254 Wis. 194, 36 N. W. 2d 97, the court relied on *Pennoyer v. Allen, supra,* and concluded that even though a coal yard was operated properly and was a social and economic business, as was found by the trial court in this case, nevertheless the operation of the coal yard would be enjoined if it caused substantial damage to the adjoining plaintiff.

We need not decide whether defendant's operations in this case amount to a criminal-law nuisance because we think the repeated violations of the city ordinance constituted as a matter of law a public nuisance. We

see no valid distinction between a city ordinance regulating business conduct and a criminal state statute. The cases involving city ordinances may be even stronger because ordinances in this state in their nature are not criminal. An ordinance is regulatory and prohibits undesirable conduct, but the consequences for its violation is a forfeiture rather than a fine or imprisonment. *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 28 N. W. 2d 345. A fortiori if repeated violations of a public statute as in *Penney* constitute a public nuisance, then the repeated violations of an ordinance constitute a public nuisance. *See* 58 Am. Jur. 2d, *Nuisances,* p. 724, sec. 146, Violation of municipal ordinances.

It does not follow necessarily that the public nuisance resulting from the repeated violation of a statute or ordinance will be enjoined; this depends upon the degree of harm. In the instant case it may well be the amount of harm caused by the repeated violations during the normal working hours of the day is insufficient to call forth an injunction, but the same degree of violation impairing the public's right to the enjoyment of their homes after normal working hours causes a greater injury and ought to be enjoined. If we were to consider the facts in this case in relation to establishing a criminal-law nuisance, it might well be an operation less than that allowed by the ordinance would constitute a public nuisance which should be enjoined. However, the briefs ask for an injunction to limit the operation to what is permitted by the ordinance between 5 p. m. and 7 a. m. On the theory of our reversal, the injunction can only enjoin operations which constitute violations of the ordinance.

*By the Court.*—Judgment is reversed, with directions to enter a judgment enjoining the operation of the defendant from violating the city ordinance as to noise and ground vibration during the hours between 5 p. m. and 7 a. m. each day of the week.