# WESTERN SUPPLY CO., INC., Plaintiff-Respondent,

v.

# T. V. APPLIANCE MART, INC., and Vincent W. Fonte, Sr., Defendants-Appellants.

Court of Appeals

*No. 87–0931. Submitted on briefs May 27, 1988.—Decided August 4, 1988.*

(Also reported in 430 N.W.2d 720.)

For the defendants-appellants the cause was submitted on the briefs of *Gerald C. Nichol,* and *Jeffrey W. Younger,* and *Lee, Johnson, Kilkelly & Nichol, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Peder G. Arneson* and *Arneson & Jenkins, S.C.,* of La Crosse.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J. T.V. Appliance Mart, Inc., and Vincent W. Fonte, Sr. ("Appliance Mart"), appeal from a summary judgment enjoining them from conducting a sale of merchandise in La Crosse on grounds that they failed to comply with the "transient merchant" law, sec. 130.065, Stats. The issues are: (1) whether the plaintiff, Western Supply Company, has standing to sue to enjoin a sale about to be conducted in violation of the statute; (2) whether Western's failure to join the City of La Crosse as a party is fatal to the action; and (3) whether the trial court erred in granting the injunction. We resolve all issues against Appliance Mart and affirm.

The facts are not in dispute. Appliance Mart, a Madison retailer, applied to the City of La Crosse for a permit to conduct a three-day sale of merchandise in that city in December, 1983. The application was filed under sec. 130.065, Stats., which requires transient merchants desiring to sell merchandise in a municipality to obtain a license to do so. Before a license may issue, the seller must file a sworn statement providing

certain identification information. The statute also requires that an itemized list of all sale merchandise, together with the seller's cost of each item, be attached to the license application and that all merchandise to be sold be exhibited for public inspection for at least forty-eight hours prior to the sale. The statute, which contemplates adoption of its requirements by local ordinance,* also provides that it "shall be enforced by the proper [municipal] officers ...." Sec. 130.065(12)(c)

It is undisputed that Appliance Mart did not provide information on the cost of the sale merchandise and did not exhibit the merchandise in advance of the scheduled sale. Western, a La Crosse appliance dealer, then commenced this action to enjoin the sale. After issuance of the temporary injunction, the parties filed cross-motions for summary judgment, Appliance Mart contending that the temporary injunction had been improperly issued, and Western arguing for its propriety. The trial court granted Western's motion, the Appliance Mart appealed.

## I. WESTERN'S STANDING

Appliance Mart points to the provisions of sec. 130.065(12)(c), Stats., stating that its terms are to be enforced by local "officers," and argues that this language preempts a private party, such as Western, from suing to enjoin a sale held in violation of the statute. We do not believe the quoted language bars a

---

*The parties' briefs do not indicate whether the City of La Crosse ever passed an ordinance adopting the provisions of sec. 130.065, Stats. Because the requirements are spelled out in the statute, however, and because the parties have argued the case in terms of the statutory violation, we do not consider the omission crucial to resolution of the issues on this appeal.

private party from seeking to enjoin such a sale. Whether, on the facts of the case, injunctional relief is warranted is another question, which we will address later in this opinion.

■

Injunctions look to the future, not to the past. *Sohns v. Jensen,* 11 Wis. 2d 449, 462, 105 N.W.2d 818, 825 (1960). Their purpose is to prevent damage, not to compensate for it. *Lakeside Oil Co. v. Slutsky,* 8 Wis. 2d 157, 168, 98 N.W.2d 415, 422 (1959). Western was not suing to "enforce" the statute within the meaning of sec. 130.065(12)(c), Stats. It was seeking only to prevent what it believed to be irreparable harm to its business resulting from a sale to be held pursuant to an illegally-issued permit. Allowing such a suit is not inconsistent with the terms of the statute.

Appliance Mart makes the related argument that because the statute provides penalties for its violation, that "remedy" is exclusive and a private party may not attempt to use a penal statute to enforce a private right. We agree that equity will not ordinarily intervene to restrain or enjoin the commission of a crime simply because the conduct is criminal. *State ex rel. Fairchild v. Wisconsin Auto. Trades Asso.,* 254 Wis. 398, 402, 37 N.W.2d 98, 100 (1949). "[B]ut the fact the acts complained of cause damage and also constitute a crime does not bar injunctional relief. The criminality of the act neither gives nor ousts the jurisdiction of equity." *State v. H. Samuels Co.,* 60 Wis. 2d 631, 636, 211 N.W.2d 417, 419 (1973).

■

If a person, by satisfying all of the legal criteria, establishes his or her right to injunctive relief, it is not an obstacle to such relief that the acts complained of may be of a criminal character or otherwise penalized

by statute or local ordinance. In such a case, the court does not interfere with the enforcement of the laws, nor does it intervene to prevent the commission of an unlawful act, although that may incidentally result. Rather, the court exercises its powers to prevent injury to a protected private interest and ignores the "public" or penal features of the act. The remedy remains preventative, not punitive.

Fines or forfeitures such as those provided in sec. 130.065(12)(a), Stats., serve to redress a wrong to the general public which has already been committed. And, as the supreme court recognized in *Sohns,* 11 Wis. 2d at 457, 105 N.W.2d at 822, there are cases where private citizens may suffer irreparable harm which is "special and different than that suffered by the general public." That harm is what Western was attempting to redress in this action. It was not suing to "enforce" the statute within the meaning of sec. 130.065(12)(c). It was seeking only to prevent what it believed to be irreparable harm to its business resulting from a sale held under the authority of an improperly issued sale permit.

## II. THE CITY AS A NECESSARY PARTY

Appliance Mart argues that because the city issued the permit without ensuring compliance with the terms of the state, the city, not Appliance Mart, is the proper defendant in the action, citing *Schulz v. Kissling,* 228 Wis. 282, 280 N.W. 388 (1938), and *Coyle v. Richter,* 203 Wis. 590, 234 N.W. 906 (1931). The cases are inapposite. Both were taxpayer actions challenging the expenditure of municipal funds, and no one would doubt that the municipalities were

necessary parties to those actions. Here, however, Western sought only to restrain Appliance Mart from conducting a sale unless and until the requirements of the statute were met. That relief could be granted without the city's participation in the lawsuit.

■

None of the requirements for mandatory joinder under sec. 803.03(1), Stats., are present here. Under that statute a party shall be joined in the action, where feasible, if:

> (a) In the [party's] absence complete relief cannot be accorded among those already parties; or
>
> (b) The [party] claims an interest ... [in] the subject of the action and is so situated that the disposition of the action in the [party's] absence may:
>> 1. As a practical matter impair or impede the [party's] ability to protect that interest; or
>> 2. Leave any of the [existing] parties subject to a substantial risk of incurring ... multiple or otherwise inconsistent obligations ....

Appliance Mart has not suggested how the City of La Crosse would fit any of the statutory categories, and we believe it does not. As we have said, Western may be afforded full relief without the city's presence in the action; and while the city may have an interest in the subject of the suit to the extent that its own standards for issuing permits may not comport with the requirements of sec. 130.065, Stats., disposition of Western's claim does not impede or impair the city's ability to protect that interest. Finally, we do not see how either Western or Appliance Mart would be subject to multiple or inconsistent obligations by reason of the city's absence as a party to the lawsuit.

222

The city was not subject to mandatory joinder, and if Appliance Mart felt it should nonetheless be a party, permissive joinder could have been requested under sec. 803.04, Stats.

## III. THE PROPRIETY OF THE INJUNCTION

Whether to grant or withhold an injunction rests in the sound discretion of the trial court. *Pure Milk Prod. Coop. v. National Farmers Organ.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979). And we will not reverse a discretionary determination if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987).

Appliance Mart argues first that the court should not have granted the injunction because the violations of sec. 130.065, Stats., were only "technical" or "inadvertent" errors which should have been excused. In essence, the argument is that substantial compliance with the statute is enough, and that because Appliance Mart is a "reputable" merchant, a statute designed to control "disreputable" merchants should be loosely applied to its activities, and a "good faith analysis" such as that used in *State v. Davis*, 63 Wis. 2d 75, 216 N.W.2d 31 (1974), should apply.

In *Davis*, the defendant was charged with violating a section of the criminal code prohibiting public officers from having private interests in public contracts when, as a county board supervisor, he accepted a job as manager of the county airport. The court held that the defendant could raise a "good faith" defense

to the charge because he had been advised by the county corporation counsel before accepting the position that there was no illegal conflict. The issuance of the permit by the city in this case is not the equivalent of the legal advice given to the defendant in *Davis.* This is not a criminal prosecution commenced on behalf of the public to punish conduct which was undertaken on the advice of the government's own attorney. And the fact that the city may have erroneously or negligently issued a permit for the sale should not prohibit a member of the public from seeking to enjoin the implementation of that permit if he or she is able to satisfy the legal requirements for issuance of an injunction.

We believe Appliance Mart's other arguments are similarly unavailing. In *White v. Ruditys,* 117 Wis. 2d 130, 137, 343 N.W.2d 421, 424 (Ct. App. 1983), we discussed when an injunction may issue, quoting an earlier case, *Pure Milk,* 90 Wis. 2d at 800, 280 N.W.2d at 700.

> To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff. To invoke the remedy ... the plaintiff must moreover establish that the injury is irreparable, *i.e.* not adequately compensable in damages. Finally, injunctive relief is addressed to the sound discretion of the trial court; competing interests must be reconciled and the plaintiff must satisfy the trial court that on balance equity favors issuing the injunction. [Citations and footnote omitted in original.]

The record in this case is adequate to establish that, without the injunction, Western would be injured, and that the injury would be irreparable in the

sense that it would not be adequately compensable in damages. Appliance Mart concedes that Western's profits would suffer from sales lost to Appliance Mart if the La Crosse sale were to be held as planned. And it does not contend that these lost profits could be readily calculated and adequately redressed by an award of damages in an action at law. Indeed, Appliance Mart assumes "that [Western's] losses are incalculable." It argues, however, that because its own losses, balanced against Western's, would be greater, the temporary injunction should not have been issued, citing the "on balance" language from *White, supra.* But *White* does not require the court to add up the "harm" on each side and then decide the case as the overall balance dictates. In that case, we merely quoted the general rule from *Pure Milk* and, concluding that the defendant's actions would cause irreparable harm to the plaintiff, affirmed the trial court's issuance of the injunction without any "balancing" of potential harm among the parties. The reference in *Pure Milk* and *White* to the "equities" of the case goes to the exercise of the trial court's discretionary powers. Here, the court considered those equities in arriving at its decision.

The court acknowledged that both parties would suffer harm—Appliance Mart if the injunction were to be granted, and Western if it were to be denied. The court then ruled in favor of Western, recognizing the mandatory language of sec. 130.065, Stats., and noting: "If the statutes are not fully complied with, [a] decision favorable to [Appliance Mart] would establish a precedent that would condone non[compliance] or partial compliance with statutory mandates ... [and f]rom the Court's perspective this would in effect rewrite the law." The court also noted the "ease" with

which Appliance Mart could have complied with the statute.

The trial court reached its decision based on the facts of record and in reliance on the appropriate and applicable law. In so doing, it properly exercised its discretion in the matter and its decision must be sustained. *Prahl,* 142 Wis. 2d at 667, 420 N.W.2d at 376.

Finally, Appliance Mart suggests that the injunction should have been denied because, by "wait[ing] to bring this action until it was too late for [Appliance Mart] to cure the ... defects of [its] ... preparation," Western showed that it had "unclean hands" and thus was not entitled to seek relief in a court of equity. The trial court rejected this argument by noting that one of the primary violations of the statute was Appliance Mart's failure to comply with the forty-eight hour merchandise display requirement, and that, as a result, the violation was not ascertainable until immediately prior to the sale. We agree and, like the trial court, we reject the argument.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*dissenting*). Appliance Mart elected to conduct its business in the city of La Crosse as a transient merchant. Its business was not unlawful nor was it a nuisance per se. Appliance Mart was, however, required to obtain a license from the city clerk under sec. 130.065, Stats., and a La Crosse city ordinance. It obtained a license from the city clerk which stated that it had "complied with all the requirements necessary for obtaining this License." On the night before Appliance Mart's proposed sale, Western Supply began this action and moved for a

temporary injunction to enjoin Appliance Mart from proceeding with its sale. The next morning the trial court heard testimony and granted Western Supply's motion. I construe the issue presented to be whether the trial court abused its discretion in granting Western Supply's motion.

The issuance of the temporary injunction had the effect of granting all the relief that Western Supply sought. Where that is the case, a temporary injunction ordinarily will not be granted unless the complainant's right to relief is clear. *Codept, Inc. v. More-Way North Corp.,* 23 Wis. 2d 165, 172, 127 N.W.2d 29, 34 (1964). Western Supply's right to relief is far from clear. The majority assumes that Western Supply had a right which was threatened by Appliance Mart's proposed sale. The majority does not, however, define that right. A business has no right to be protected against competition. Further, even if a competitor operates its business in an unlicensed or unlawful way, a business has no right to injunctive relief, unless the business suffers some injury which is special to it and different from the public right.

The majority correctly states the standard which must be met before a temporary injunction will be issued but does not follow through and identify the right which entitled Western Supply to injunctive relief. The majority relies on *Pure Milk Prod. Coop. v. National Farmers Organ.,* 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979), where the court stated:

> To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant *will violate a right of* and will injure the plaintiff. *The Kimberly & Clark Co. v. Hewitt,* 75 Wis. 371, 375, 44 N.W. 303, 304 (1890). (Emphasis added.)

227

Both trial courts stated what they believed to be Westerns Supply's protected right. Judge Pappas, who granted the temporary injunction, stated, "the requirements of Ch. 130 essentially are for consumers but I would think that along with that, is the desire to prevent unfair competition as well." Judge Mulroy, who granted Western Supply's motion for summary judgment, stated, "Chapter 130 serves at least the dual purpose of consumer protection and promotion of fair competition by its requirements."

I will shortly show that the transient merchant statute is not intended to control competition between local merchants and transient merchants. Assuming, however, for the moment that the prevention of unfair competition is one of the purposes of sec. 130.065, Stats., neither the trial courts nor the majority demonstrate why the courts should, at the instance of a competitor, enforce the statute, at least not without a showing of special and peculiar damage. "A court of equity ordinarily will not interfere by injunction to restrain the commission of a criminal act or to restrain the violation of public or penal statutes." (Citations omitted). *State ex rel. Fairchild v. Wisconsin Auto. Trades Asso.*, 254 Wis. 398, 402, 37 N.W.2d 98, 100 (1949).[1] Cases on this subject are collected in

[1]Enforcement of sec. 130.065, Stats., lies within the discretion of the public officials charged therewith. *Galuska v. Kornwolf*, 142 Wis. 2d 733, 741, 419 N.W.2d 307, 311 (Ct. App. 1987). Western Supply's remedy, if any, was to apply to the city clerk to review her determination to issue a license to Appliance Mart. Ch. 68, Wis. Stats. Western Supply has made no showing that ch. 68 did not afford it an adequate remedy to review the issuance of the license. *See American Mut. Liability Ins. Co. v. Fisher*, 58 Wis. 2d 299, 305, 206 N.W.2d 152, 156 (1973) ("Only if there is no adequate remedy at law is an aggrieved party entitled to the equitable remedy of injunction."). (Citations omitted.)

Annotation, *Right to enjoin business competitor from unlicensed or otherwise illegal acts or practices,* 90 A.L.R.2d 7 (1963). The holdings of the cases are summarized as follows:

> As a broad proposition, it can be concluded, on the basis of the cases discussed herein, that ordinarily the mere fact that the defendant is a competitor of the plaintiff does not entitle the latter to injunctive relief against the defendant's unlicensed or otherwise illegal acts or practices, but that there must be something more involved, such as a property right in the plaintiff which is entitled to protection, special damage to the plaintiff, or a public interest deemed worthy of protection.

*Id.* at 12–13.

Western Supply does not have a property right in possible lost profits which is entitled to protection. Nor is the loss of possible profits a cognizable special damage to Western Supply, and it has no right to a private remedy for the redress of a public wrong, *Hobbins v. Hannan,* 186 Wis. 284, 297, 202 N.W. 800, 805 (1925).

If Western Supply belonged to a class of persons intended to be protected by sec. 130.065, Stats., equity might enjoin an unlicensed sale conducted by its competitor, Appliance Mart. *See* Annotation, 90 A.L.R.2d at 15–16 (where injunctive relief has been granted or recognized, the courts have followed three theories: (1) the "property right" or "franchise" theory; (2) the "nuisance theory"; or (3) the "public interest" or "public protection" theory). The trial courts considered that Western Supply was within a class of persons intended to be protected by the transient merchant statute. This is not the case.

229

Attempts of municipalities and states to regulate transient merchants have had a long and checkered history. Wisconsin's regulatory efforts have evoked such magniloquent prose as the following from *State v. Whitcom,* 122 Wis. 110, 114, 99 N.W. 468, 469 (1904):

> Our statute relating to the licensing and punishing of peddlers and transient merchants (secs. 1570 *et seq.,* Stats. (1898), as amended by ch. 341, Laws of 1901) is an edifice of composite architecture, made up of a series of portholed turrets for offense against the obnoxious, and sheltered corridors to shield the favorites of the successive legislatures which have contributed to the conglomerate now under consideration.

The court invalidated the statute because, among other failings, it discriminated in favor of local merchants as opposed to nonresident merchants. Attempts of municipalities by discriminatory ordinances to protect local merchants from the competition of transient merchants have been uniformly struck down. State legislative efforts subsequent to *Whitcom* have been sustained precisely because their impact falls equally upon the resident merchant and the nonresident merchant. The purpose of such legislation was stated in *Monroe v. Endelman,* 150 Wis. 621, 623, 138 N.W. 70, 71 (1912), to be "a dual one, namely, to regulate the trades and occupations mentioned under the exercise of the police power and to impose a reasonable tax upon such occupations and trades."

The attorney general has stated the purpose of the transient merchant statute as follows:

> The transient merchant statute was directed against those individuals who temporarily locate in a municipality, carry on their business, make a

> profit and then remove from that municipality without paying any taxes or without contributing in any manner to the upkeep of governmental agencies.

22 Op. Atty. Gen. 454, 456 (1933).

I do not find in any of the various transient merchant statutes since *Whitcom,* including sec. 130.065, Stats., any legislative intent to protect local merchants from competition from transient merchants. Any such legislative attempts would be constitutionally suspect. Section 130.065, Stats., conforms to the courts' and the attorney general's depiction of a transient merchant statute as a taxing and regulatory measure.

Even if sec. 130.065, Stats., were intended to protect local merchants from unfair competition (perhaps a valid police power objective), I do not see how Appliance Mart's alleged infractions placed it in a merchandising position unfair to Western Supply. The trial court which granted the temporary injunction found that Appliance Mart had not complied with subs. (3) and (11) of sec. 130.065, Stats. Subsection (3) required that Appliance Mart attach to its application for a license an itemized list of all merchandise to be offered for sale, reciting a description of each item, the owner's actual cost and a number corresponding with a number to be affixed to each item to be sold. Subsection (11) required that Appliance Mart display the merchandise to be sold at least forty-eight hours before the beginning of the sale. The obvious purpose of these provisions is to protect the consumer against fraud and to identify the for-sale items to guard against the sale of stolen goods. Western Supply had

not demonstrated how it was disadvantaged by these instances of noncompliance.

In a related vein, I find it particularly significant that Western Supply knew of Appliance Mart's proposed sale approximately a week before the sale, that it began at that time to seek legal action against Appliance Mart through the city attorney and district attorney but made no effort to contact Appliance Mart. In these circumstances, I am not impressed by Western Supply's argument that to protect its rights it was necessary to have literal compliance with sec. 130.065. It is painfully apparent that Western Supply used the statute to protect itself from legitimate competition. It is not entitled to the aid of the courts for that purpose. I therefore dissent.[2]

[2]Also, I am of the opinion that Western Supply made no showing of irreparable injury. *See American Mutual,* 58 Wis. 2d at 305, 206 N.W.2d at 156 ("an injunction may not be granted unless there is the threat of irreparable injury"). Its damages, if any, were calculable. The fact that some assumptions would have been necessary did not make its damages so difficult to determine *as to* justify use of the "extremely powerful instrument," *Pure Milk,* 90 Wis. 2d at 800, 280 N.W.2d at 700, of injunction.